### ELDRED *v.* MALLOY.

CONTRACT OF WAGER — *not enforceable.* An action will not lie on a contract to pay a sum of money upon the condition that a railroad should be built to a place named, on or before 20th of February, 1871.

Promissory note must be certain as to day of payment.

A promise to pay a sum of money upon the condition that a railroad should be built to a place named on or before 20th of February, 1871, is not a promissory note, and is not negotiable as such.

*Error to Probate Court, Jefferson County.*

ASSUMPSIT upon a written instrument in this form:

"GOLDEN CITY, COL. TER., *May* 20, 1870.

"Nine months after date, for value received, I promise to pay J. A. Remington, or order, five hundred dollars, without defalcation or discount, at Golden City, Colorado. The consideration of the above is that if the railroad is completed and cars running to a point inside the Table Mountains, at Golden City, Colorado territory, on or before the 20th of February, A. D. 1871, the above sum will be duly paid to the before-mentioned J. C. Remington; otherwise the obligation to be null and void.

"STEPHEN ELDRED."

Remington assigned to Gorman and the latter assigned to defendant in error, who was plaintiff below.

At the trial several witnesses testified that the contract was given upon a wager as to when the Colorado Central railroad would be completed to Golden City. There was also evidence to show that the road was completed in September, 1870.

The plaintiff had judgment.

Messrs. MILLER & MARKHAM, for plaintiff in error.

Mr. A. H. DeFRANCE, for defendant in error.

BELFORD, J. Notwithstanding the fact that contracts of wager have been regarded as valid at common law, a disposition has been steadily growing in all respectable courts to discountenance and ignore them. It is generally conceded that the principle was engrafted on that system at a time when but little consideration was given to the subject, and the right to recover in such cases quite fully established before any searching inquiries were made into the moral tendencies of the doctrine. While bowing to the authority of Lord MANSFIELD, such able jurists as ELLENBOROUGH and CAMPBELL and LE BLANC have declined to entertain such cases, while other judges have refused to proceed as long as any thing else could be found to do, constantly declaring that were the question a new one, the rule would be different.

The manifest disfavor extended to these contracts by the English judges, and the unremitting efforts that are being made to get rid of a rule established through the inadvertence of their predecessors, convinces me, that in upholding these contracts, the earlier decisions were founded on a misapprehension of the common law.

The courts of this territory have enough to do without devoting their time to the solution of questions arising out of idle bets made on dog and cock fights, horse races, the speed of ox trains, the construction of railroads, the number on a dice or the character of a card that may be turned

up. If we enter upon the work of settling bets made by gamblers in one case, especially on the time when the Colorado Central railroad reaches Golden, or when it will reach Georgetown, we may despair of ever finding time for the dispatch of those weightier matters which affect the personal and property rights of the respectable people in this territory. If the gate is once opened for this kind of litigation, it is more than probable that we may be overrun with questions arising out of bets. The spirit of our laws discountenances gambling. Penalties are prescribed against gaming, and I can see no difference in principle in the bet that the faro dealer will turn up a jack the next turn and the bet that the railroad will be built to Table Mountain in so many days.

It would be an anomaly in law to punish a man for the one bet and reward him for the other. The character of this case seems to be unique throughout. Remington, the original payee of this paper, sold it to Gorman for fifteen dollars, and he assigned it to Malloy for nothing. The document seems to preserve its original character throughout all its stages. It originated in a venture and has had a venturesome career. From five hundred dollars it has degenerated to zero. Appreciating the regrets of English judges over the establishment of a wrong rule in Great Britain, we are in favor of making a correct start here, and accordingly hold that no wagering contract is enforceable.

There is another objection equally fatal. The instrument sued on is not negotiable. To constitute a promissory note the money must be certainly payable, not dependent on any contingency, either as to time or the fund out of which payment is to be made, or the parties by or to whom payment is to be made. If the terms of an instrument leave it uncertain whether the money will ever become payable, it cannot be considered as a promissory note. In this case payment was to be made if the railroad reached a given point at a given time. If the point was not reached within the time, then the instrument was

to be null and void. The contingency might never happen, and therefore the money was not certainly, and at all events, payable. The instrument then lacked an essential ingredient of a promissory note, and consequently was not negotiable under the statute. The fact that the railroad did get there in time makes no difference. It was not a promissory note when made, and it could not become so by matter *ex post facto.* The plaintiff has not the legal title to the instrument, and could not bring the suit, and the defendant's objection to its introduction in evidence should have been sustained.

We will reverse the judgment without remanding the cause, and the plaintiff in error will recover his costs, both here and in the court below.

*Reversed.*