Wilson, J.
This suit grew out of a bet upon the result of an election for an alderman of the city of Denver, and a recovery was sought from the stakeholder by one of the parties to the wager, of the amount deposited by him. The allegations of the complaint are to the effect that plaintiff Van Horn deposited with defendant Maher, the stakeholder, the sum of $220, an equal amount being'deposited at the same time by one McCauley and one Pennington, the agreement being that the entire sum was to be held by the defendant to abide the result of an election for alderman in the third ward of the city, and that, in the event Doyle was elected alderman, the entire sum was to be paid to McCauley and Pennington; in the event of the election of Dayis, the entire sum was to be paid to the plaintiff. It was further averred that on April 7th, the day succeeding the election, the plaintiff gave notice, in writing, to the defendant, not to pay said sum of money, or any part thereof, to Pennington and McCauley, and warning defendant that theplaintiff would hold him responsible for the moneys so deposited in his hands. That on May 24th, following, plaintiff made demand upon the defendant to pay him the “said sum of money so deposited with him as aforesaid,” and that defendant refused to pay the same. Defendant answered, admitting the deposit with him of the money upon the condition set forth in the complaint. He also admitted *16 the sendee upon him by plaintiff of a notice, in writing, on April 7th, and set forth the notice in full, as follows :
“Denver, Colorado, April 7th, 1897.
“To William Maher,
“Denver, Colorado.
“ You are hereby notified not to pay over any sum or sums of money in your hands and custody as stakeholder of certain wagers made by William McCauley with William L. Van Horn, — two hundred dollars deposited by each on the result of the election for alderman' in the Third ward of the city of Denver, and the further sum of fifty dollars wagered by Thomas Johnson against a like amount of fifty dollars wagered by William L. Van Horn on the result of the election for alderman in the said Third ward, and the further sum of twenty dollars wagered by J. L. Pennington against a like sum of twenty dollars wagered by William L. Van Horn on the result of the election for alderman in the Third ward of the city of Denver, which said election was held therein on the sixth day of April, 1897, and which sums of money, aggregating five hundred and forty dollars, were placed in your hands, as stakeholder, to be paid to the winner of said wagers, to be determined by the election of alderman in said ward, and as to which election the result remains in doubt.
“ Therefore, this is to notify and warn you not to pay said sum or any part thereof to either the said William McCauley, Thomas Johnson or J. L. Pennington, or any person for them, and that I will hold you individually responsible for said money so deposited in your hands as aforesaid.
“ W. L. Van Horn.”
The answer also alleged that after the service of said notice, to wit, on the 12th day of April, a certificate of election as alderman was issued to Doyle by the properly constituted city authorities; and, upon the presentation to him of said certificate, he paid the money in his hands to McCauley and Pennington. The answer further sets forth the notice served upon defendant on May 24th, as follows:
*17 “ May 24, 1897.
“ Mr. Wm. Maher,
“ 1643 Curtis St., Denver Colo.
“ Sir: I hereby demand that you forthwith pay over and deliver to me the sum of $440, being an amount deposited in your hands on or about the 5th day of April, 1897, as a wager upon the result of the election of alderman in the Third ward of the city of Denver, then ensuing; $200 of which said sum was wagered by William McCauley against a like sum wagered by me; $20.00 wagered by J. L. Pennington against a like sum wagered by me, all of which sum was placed in your hands as stakeholder, to be held by you awaiting the result of said election, and upon the determination of such election to be paid over by you to the winner of such wager. Said election having taken place, and the result of said election having been legally and finally determined by the tribunal authorized by law to determine such elections and the result being the election, finding and declaration thereof by the board of aldermen of the city of Denver that the candidate upon whose election I wagered my money, was duly elected, I now, therefore, demand payment to me of said stakes.
“ Yours respectfully,
“ W. L. Van Horn.”
These two notices, the answer averred, were the only notices ever served upon or given to defendant by plaintiff.
Defendant further alleged that at the time of the commencement of the suit, he did not have in his hands, or under his control, any of the money deposited with him on the bet. It will be observed that the notice served on April 7th referred also to another bet of plaintiff’s in the sum of $50.00, but this is mot involved in this suit. Upon the filing of the answer, plaintiff made a motion for judgment upon the pleadings, which was allowed. From the judgment so rendered, defendant appeals.
It is conceded by both parties that wager contracts on the result of elections are contrary to public policy and void, and *18 will not be enforced by the courts, even though there be no statute on the subject. It was early so held in Colorado with reference to all wagering contracts. Eldred v. Malloy, 2 Colo. 320. This question, therefore, is eliminated from consideration.
It is further conceded that a party to a bet may recover from the stakeholder the amount deposited by him, if before-it is paid over to the winner, the stakeholder has been notified by such party that he has repudiated or rescinded the contract, and that his authority, has been revoked. In fact, this seems to have been expressly so held in this jurisdiction. Corson v. Neatheny, 9 Colo. 214.
The case, therefore, narrows down to the consideration of only one question, do the facts admitted by the pleadings bring this case within the last proposition, so as to permit the application of the conceded rule ? .
Between the parties to a wagering contract, the law, from reasons of sound public policy, will not interfere in aid of either to secure an enforcement of the contract, or a recovery from the stakeholder after the execution of the contract of the deposit made with him by either party to the wager. Fisher v. Hildreth, 117 Mass. 558.
They are in yari delicto, and cannot ask the court to recognize an agreement which the law declares to be immoral and unlawful. The right of a party to maintain an action of this character, and to recover from a stakeholder, before payment, the amount deposited by him, is based upon the fact that the stakeholder is not a party to the illegal contract, and is not in pari delicto ; that he is the mere bailee, or agent, of the parties to hold money, the title to which has not been changed. The plaintiff in such a case cannot seek nor have a recovery upon a promise, which within the policy of the law, is a void promise, but upon the ground that he elected to repudiate and rescind an unlawful contract, revoked the authority of the bailee and recalled his money before it was paid over under the terms of the illegal agreement.
As to what constitutes a sufficient notice to the stakeholder *19 to stop payment under the provisions of the unlawful agreement, and render him liable for the return of the money deposited by the party giving the notice, there is some little seeming conflict of authority, arising generally, however’, from the differing attendant circumstances, and the varying character of the language used in the notices, and the manner of giving notice. The general consensus arrd great weight of modern authority, however, establishes the doctrine which accords with reason and principle, that the language must be such as to clearly express the intent of the party giving the notice then and there to repudiate arrd rescind the entire wagering agreement ; to revoke the stakeholder’s authority to pay the money deposited by the party to any person other than himself, and to demand a return of his deposit. Of course, no particular form of words is required, but it accords with reason, as well as law, that they should be such “ as would be altogether intelligible, and not of such dubious import as to leave it uncertain what the depositor intended, or whether the authority given when the money was deposited was revoked.” Ivey v. Phifer, 11 Ala. 539.
In our opinion, the notice given by the plaintiff on April 7th did not come within the rule, and was not sufficient to support this action. There is not a word in it which indicates any intent of plaintiff, either then or at any subsequent time to repudiate the wager, or to revoke the authority of tire stakeholder to pay the entire deposit to the winner upon the happening of the contingency specified in the agreement. Because the result of the election was then in doubt, therefore plaintiff notified the stakeholder not to pay the entire deposits, or any part thereof, to the parties with whom he made the wager. He did not demand by this notice, nor indicate any intention to demand at any future time, a return of the money deposited by himself. If McCauley or Pennington had afterwards repudiated the contract and demanded a return of his deposit only, the stakeholder could not have acceded to the demand without going contrary to the notice of plaintiff, because in this, he expressly forbade the defend *20 ant to pay to these parties the entire deposit, or any part thereof. The stakeholder was also specifically warned that he would be held individually responsible, not only for the amount deposited by plaintiff, but for the entire sum deposited by all of the parties to the wager. The words “ and as to which election the result remains in doubt,” used after reciting the amount and terms of the wager, must be construed in connection with the other parts of the notice, and they are the only words which tend to throw light upon the intent of the plaintiff. The notice was, in effect, simply saying to the stakeholder, “The result of this election is yet in doubt, and while this is the case, I notify you not to pay the money to the parties with whom I made the wager until this matter is finally determined, and, if you do, I will hold you individually responsible for it.” Any other construction of it would, we think, do violence to the English language. The so-called notice was in reality a recognition and reaffirmance of the original agreement. If there were any possible question about this, all doubts would be absolutely removed by an inspection of the subsequent notice given by plaintiff to defendant on May 24th. In this, he claims to have been the winner of the wager, and demands accordingly, the payment to him of the entire sum deposited with the stakeholder by himself and the other parties to the bet. The notice was wholly insufficient to charge the stakeholder with any liability. These views are, in our opinion, in entire accord with the fundamental principles which underlie such actions, and which must justify recovery, if at all, and are supported by the best authority. We cite a few cases in point. Okerson v. Crittenden, 62 Ia. 299; Trenery v. Goudie, 106 Ia. 693 ; Colson v. Meyers, 80 Ga. 499 ; Patterson v. Clark, 126 Mass. 531; Wilkinson v. Tousley, 16 Minn. 305; Burroughs et al. v. Hunt, 13 Ind. 179.
The case first cited is “on all fours” with this, so far as concerns one of the main questions which have been presented and discussed. In that, as in this case, the plaintiff had demanded of the stakeholder the whole amount wagered, on the ground that he was the winner. The court said:
*21 “ This cannot he regarded as a revocation or repudiation of the wager, nor can it be regarded as a notice to the stakeholder not to pay the amount placed in his hands by the plaintiff. No demand was made on the stakeholder for the amount the plaintiff placed in his hands. This he was required to do before the stakeholder could be made liable.”
In Patterson v. Clark, supra, the plaintiff, as in this, never demanded the return to him of his half of the deposit, but, as did the plaintiff here, by his April notice, forbade the stakeholder to pay the money to other parties as winners. The court say:
“ Upon the agreed statement of facts, it is certain that he never revoked his authority to pay the whole one hundred dollars to the winner.”
The plaintiff in that case, as did the plaintiff here by his notice of May 24th, contended that he, himself, was the winner, and demanded the payment of the entire deposit.
In Colson v. Meyers, the plaintiff gave to the stakeholder written notice not to turn over the moneys held by him, as he should “ probably contest the election.” The court said of this:
“ It is not a demand by Meyers on Colson for his part of the money, but is simply a notice to Colson to hold up the whole amount, as he (Meyers) would probably contest the election.”
Trenery v. Goudie was a ease wherein a recovery was sought from the stakeholder of the amount deposited with him by a party to the wager. The court said: “ His (plaintiff’s) right in the courts begins only when he repudiates the original transaction. If, before the money was paid to Boyle, the plaintiff repudiated the wager and notified the defendant of the fact, and warned him not to pay over the amount of plaintiff’s money in his hands, then he can recover, otherwise not. We do not find the plaintiff ever revoked the wager. On the contrary, he .expressly recognized it, and the only warning given defendant was that he should not treat Boyle as the winner, without further no *22 tice.” This was a case which appears from the opinion to have been quite similar to the one at bar. It was a bet upon an election. The count of the judges of election showed that a certain candidate was elected, but, in a contest thereafter, the other candidate was awarded the certifidate of election. The plaintiff notified the stakeholder not to pay over the money upon the return- of the election judges, but, in defiance of this, the stakeholder did so.
The appellee has cited us to two cases in support of his contention that the notice was sufficient. Hale v. Sherwood, 40 Conn. 332; Willis v. Hoover, 9 Ore. 418.
In the first case, the opinion was rendered by a divided court, and we are much more strongly impressed with the reasoning and argument of the dissenting opinion than that rendered by the majority of the court. We do not believe the decisions are in accord with the general weight of authority and with the best considered eases. However this may be, they are not in point. They are to the effect that, although the plaintiff demanded a greater sum than he had deposited, this was not a reason why he should not be entitled to the sum which he actually did deposit. The plaintiff in this case, by his notice of April, did not demand the payment to himself of anything. By that of May 24th, he demanded the entire amount, as winner of the whole, and this was not a sufficient demand or notice to sustain 'this action, as we have seen from the cases cited. But, even if this had been a good and sufficient notice, it came too late, because it was after-payment had been made by the stakeholder, the contract had been executed. This doctrine is supported by all of the authorities. Before consummation, the law allows a party to an unlawful contract to repudiate it, and revoke an authority which he may have given under it, but will not consider his claims afterwards. Not availing himself of this privilege, he cannot complain, and must accept the consequences. Goldberg v. Feiga, 170 Mass. 146.
The allegations of the answer were not denied, there being no replication, and hence they stood as admitted facts; They *23 constituted a complete defense to tlie cause of action set forth in the complaint, and not only was the plaintiff not entitled to judgment upon them, hut the defendant would have been entitled to a judgment in his favor. It follows that the judgment herein must he reversed, and it will he so ordered.
Reversed.