No. 27397

**The People of the State of Colorado v. The Wheatridge Poker Club, and Dan Conrad and Harlen Olson and Ray Slife, Principals of The Four Aces Social Club, Inc., a Colorado corporation d/b/a The Wheatridge Poker Club**

(569 P.2d 324)

Decided September 12, 1977.　　　　　Rehearing denied October 3, 1977.

16

Nolan L. Brown, District Attorney, Joseph Mackey, Deputy, for plaintiff-appellee.

Bernard D. Morley, for defendants-appellants.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This appeal concerns the scope and constitutionality of certain provisions of the Colorado statutes prohibiting professional gambling. Sections 18-10-101, *et seq.*, C.R.S. 1973. The district court found that the defendants were engaged in professional gambling as defined by statute and that such activities constituted a public nuisance under section 16-13-303(1), C.R.S. 1973. It further upheld the constitutionality of the gambling statutes and ordered that defendants' activities be permanently enjoined. We affirm.

Defendants, Wheatridge Poker Club, The Four Aces Social Club, Inc. (d/b/a Wheatridge Poker Club) and its principals began operation on June 15, 1976. On July 20, a civil action was commenced by filing a summons and complaint in the district court alleging that the defendants maintained gambling premises and were engaged in professional gambling and that these activities constituted a class 1 public nuisance. A criminal action arising from the same events had also been initiated though the date of commencement is not specified in the record.

After a temporary restraining order had been issued in the civil case, a hearing was held on defendants' motion to dismiss the criminal action.

The transcript of this hearing contained the facts to which all parties stipulated at a subsequent hearing for a temporary injunction in the civil case. At the hearing on the temporary injunction, all parties agreed that the result of that proceeding should be in the form of a final decision. It was also stipulated that the criminal action filed against defendants would be held in abeyance pending the outcome of this appeal in the civil nuisance action.

The stipulated facts show that defendant Conrad is the sole owner of the Four Aces Social Club (d/b/a Wheatridge Poker Club) which was organized as a social club and provided members with space for social activities; that members engaged in gambling there at times; that the club was a "for-profit corporation" and derived its profit solely from yearly membership dues of $20.00 per member and a flat "per chair" fee regardless of the occupant's activities; that the club does not take a percentage of the "pot" in any game; that members use club facilities for activities other than gambling, although there are no facilities specifically for activities other than card playing; that the players tell the defendants what stakes will be played, as this has to be known to them in order to charge the different chair rental fees every half hour. The amount of the chair rental fee was either $2.00 or $4.00 per hour depending upon the table limit.

I.

Section 16-13-303(1), C.R.S. 1973, provides that every building together with all of its fixtures and contents shall be deemed a class 1 public nuisance if used as gambling premises. "Gambling Premises" is statutorily defined as any place used or intended to be used for "professional gambling." Section 18-10-102(5), C.R.S. 1973. It is the statutory definition of "professional gambling" which is the primary focus of this appeal:

"(8) 'Professional gambling' means:

"(a) Aiding or inducing another to engage in gambling, with intent to derive a profit therefrom; or

"(b) Participating in gambling and having, other than by virtue of skill or luck, a lesser chance of losing or a greater chance of winning than one or more of the other participants." Section 18-10-102(8), C.R.S. 1973.

Since it is not alleged that the defendants participated in gambling in any way, the issue is whether the defendants "aided or induced" another to engage in gambling with the intent to derive a profit therefrom. Defendants concede that one of the purposes for which they engaged in their activities was to make a profit as this is defined in the statute. Section 18-10-102(1), C.R.S. 1973.

The terms "to aid" and "to induce" are not defined within the gambling statute. A definition of "to aid" is provided, however, in the general definitional section of the Colorado Criminal Code:

"'To aid' or 'to assist' includes knowingly to give or lend money or extend credit to be used for, or to make possible or available, or to further the

activity thus aided or assisted." Section 18-1-901(3)(a), C.R.S. 1973.
The definitions contained in this section are to apply "whenever the same term is used in the same sense in another section of [title 18] unless . . . the context indicates that it is inapplicable." Section 18-1-901(1), C.R.S. 1973.

Defendants argue that within the context of the gambling statute the general definition of "to aid" is inapplicable and that the term means only an active participation in, or profiting from, the gambling process itself. We see no reason, however, why the general statutory definition of "to aid" should not apply to the gambling statute.

Defendants claim that such a broad definition would embrace every activity remotely related to gambling. The legislature, however, has avoided this dilemma by specifically excepting from the prohibitions of the statute certain forms of gambling including "social" gambling:
"(2) 'Gambling' . . . does not include . . .
"(d) Any game, wager, or transaction which is incidental to a bona fide social relationship, is participated in by natural persons only, and in which no person is participating, directly or indirectly, in professional gambling." Section 18-10-102(2), C.R.S. 1973.

Defendants note that the Colorado legislature in drafting the gambling statute relied in part on the Model Anti-gambling Act [proposed by the National Conference on Uniform State Laws (1952)]. *See* official comment to section 40-10-101, 1971 Perm. Supp., C.R.S. 1963. In defining "professional gambling" the Model Act specifically enumerates various types of activities which should be construed as falling within the definition. Since these activities all contemplate an active participation in the gambling process, we are asked to interpret similarly the Colorado definition of professional gambling. We decline to do so. The list of professional gambling activities in the Model Act is prefaced with language of non-exclusivity. *See,* section 2(3), Model Act, *supra.* Beyond this, however, the Colorado approach is significantly different from that of the Model Act. Rather than providing a specific list of prohibited activities, the Colorado legislature has specifically excepted certain forms of gambling activity.

Applying, then, the general statutory definition of "to aid" to the facts here, it is clear that defendants' activity falls directly within that definition. They knowingly and for profit furnished a place for the purposes of gambling as well as all the necessary facilities, including poker tables, chairs, cards, and change.

Moreover, defendants' activities fall within the term "induce" as used in the statute in defining professional gambling. The term "to induce" while not statutorily defined, may be ascribed its ordinary dictionary definition. Among the definitions of "induce" in *Webster's Dictionary* we find, "effect, cause; to cause the formation of." Defendants advertised the

club as a poker club and provided all necessary accommodations for the gambling activity in question. Obviously, their activities had the "effect" of promoting gambling for profit to themselves.

The cases from other jurisdictions which defendants cite for the proposition that accepting a fixed share of the poker game stakes is an essential element of professional gambling are inapposite. *See Peachey v. Boswell*, 240 Ind. 604, 167 N.E.2d 48 (1960); *State v. Stone*, 311 N.E.2d 446 (Ind. App. 1974); *People v. Bernstein*, 36 Mich. App. 687, 194 N.W.2d 11 (1971); *People v. Johns*, 336 Mich. 617, 59 N.W.2d 20 (1953); *Squires v. State*, 525 S.W.2d 686 (Tenn. Cr. App. 1975); *Alley v. State*, 218 Tenn. 497, 404 S.W.2d 493 (1966). As previously indicated, it is not necessary in Colorado that someone actively participate in the gambling process in order to be engaged in professional gambling. Moreover, we find no significant distinction between "taking a cut of the pot" and charging an hourly chair rental fee which permits a player to engage in gambling. In both instances, the individual receiving the money is deriving a "profit" from the gambling activity.

It is finally to be noted that the Wheatridge Poker Club does not fall within the "social gambling" exception of section 18-10-102(2). First, the poker playing is not incidental to a bona fide social relationship since members of the club are strangers brought together through newspaper advertisements and promotions for the sole purpose of gambling. Secondly, there is participation in professional gambling. The defendants induce people to come to the poker club for the sole purpose of deriving a profit from gambling activities of the players.

## II.

Defendants next argue that the phrase "aiding or inducing" as employed in section 18-10-102(8)(a), C.R.S. 1973, is unconstitutionally vague. It is urged that the statute draws no clear line between deriving a profit from the act of "aiding or inducing" gambling and the situation wherein a country club or fraternal lodge permits use of its facilities for gambling by some of its members. The test, as both the plaintiff and defendants acknowledge in their briefs, is:

" . . . whether the language [of the statute] conveys sufficiently definite warning as to the proscribed conduct when measured by common understandings and practice." *Jordan v. De George*, 341 U.S. 223, 231-32, 71 S.Ct. 703, 95 L.Ed. 886, *reh. denied*, 341 U.S. 956, 71 S.Ct. 1011, 95 L.Ed. 1377 (1951).

We find the pertinent provisions of the Colorado gambling statute satisfy this test. As has been noted, the Colorado statute specifically exempts "social gambling" from the definition of "gambling." Since such activity does not constitute "gambling" as defined in the statute, "aiding or inducing" such activity does not amount to engaging in professional gambling. The definitions of "to aid" and "to induce" have been discussed in Part I of

this opinion. When read in light of the general legislative intent to protect the people of this state from persons seeking *to profit* from gambling activities (section 18-10-101(1), C.R.S. 1973), together with the specific exception provided for social gambling, we find sufficiently clear expression to meet the constitutional tests regarding vagueness. The use of the phrase "aiding or inducing" is not unconstitutionally vague in this context.

Nor do we agree with the defendants' argument that the definition of "profit" in the gambling statute is unconstitutionally vague. "Profit" is there defined as:

"[other than direct realization of winnings] any other realized or unrealized benefit, direct or indirect, including without limitation benefits from proprietorship, management, or unequal advantage in a series of transactions." Section 18-10-102(1), C.R.S. 1973.

When this section is read in the context of the gambling statute it is perfectly apparent that its thrust is to prohibit activities which derive a substantial benefit from the promotion and operation of gambling. The defendants' activities fall clearly within the ambit of the statutory prohibition, for the profit to the defendants comes directly and for all practical purposes exclusively from the gambling activity itself.

### III.

There is a further suggestion that the statute impinges on free expression and the right to privacy on the part of individuals engaged in gambling at the club and is, therefore, unconstitutionally overbroad in a First Amendment sense. We are unable to conclude that any of the activity arguably reached by the statute could be characterized as free expression or involving any right to privacy as that right has previously been defined. *See United States v. Matya*, 541 F.2d 741 (8th Cir. 1976) *cert. denied*, 45 U.S.L.W. 3570 (February 22, 1977).

Defendants also assert that the statute is unconstitutionally overbroad and denies defendants due process of law because of an irrational presumption in the definition of "gambling premises." Section 18-10-102(5), C.R.S. 1973. The statute provides that any place where a gambling device is found is presumed to be intended to be used for professional gambling. This presumption has not been raised in any of the proceedings against defendants to date, nor was it relied upon by the district court in its decision. It, therefore, has no application to this case and will not be considered.

### IV.

We find the remaining assignments of error completely without substance.

The judgment of the district court is affirmed.

MR. JUSTICE LEE does not participate.