## No. C-1387

## Ervin Houston v. Michael A. Younghans

(580 P.2d 801)

Decided July 3, 1978.

Jerry L. Stevens, for petitioner.

Wollrab and Younghans, P.C., Sandra Younghans, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to consider the question of whether a debt arising from *social* gambling may be enforced. We answer the question in the affirmative and therefore affirm the Superior Court.

The following facts are undisputed. Respondent, Michael A. Younghans, was playing poker with friends at the home of the petitioner, Ervin Houston, in July 1975. All of the players "purchased" poker chips from the petitioner, which were to be redeemed by petitioner at the end of the game. When the game was over, petitioner had lost and, not having paid for his chips, he did not have sufficient funds to redeem all the poker chips which were "cashed in" by the other players. In order to redeem the chips of the other winners, petitioner borrowed from respondent. In return, petitioner gave respondent two checks in the amounts of $140 and $100. Upon presentment of the checks by respondent, the bank dishonored them due to insufficient funds. Thereupon, petitioner gave respondent $75 in cash and an undated check for $165. This check was also dishonored.

Respondent then brought suit in county court to recover the $165. The petitioner testified that he had issued the check but decided not to honor it because someone had cheated during the poker game. At the conclusion of respondent's case, petitioner moved for a directed verdict on the grounds that a claim to recover upon an instrument given in consideration of gambling activities is against public policy and is therefore unenforceable. The motion was denied. The trial court entered judgment for respondent, ruling that the new gambling code, section 18-10-101, *et seq.,* C.R.S. 1973, changed the common law and specifically exempted "social gambling" from the ambit of forbidden conduct. The Superior Court affirmed, and we granted certiorari.

In enacting the new gambling code, the legislature expressly stated in section 18-10-101:

"(1) It is declared to be the policy of the general assembly, recognizing the close relationship between professional gambling and other organized crime, to restrain all persons from seeking profit from gambling activities in this state; to restrain all persons from patronizing such activities when conducted for the profit of any person; to safeguard the public against the evils induced by common gamblers and common gambling houses; and at the same time to preserve the freedom of the press and to *avoid restricting participation by individuals in sport and social pastimes which are not for profit, do not affect the public, and do not breach the peace.*

"(2) All the provisions of this article shall be liberally construed to achieve these ends and administered and enforced with a view to carrying out the declaration of policy stated in subsection (1) of this section." (Emphasis added.)

In promulgating this new policy, the general assembly redefined "gambling" to exclude the activity which is the subject of this litigation. The definitional section specifically excludes from gambling:

"Any game, wager, or transaction which is incidental to a bona fide social relationship, is participated in by natural persons only, and in which no

person is participating, directly or indirectly, in professional gambling." Section 18-10-102(2)(d). Professional gambling, the proscription of which is the real focus of the code, is defined in section 18-10-102(8) as:

"(a) Aiding or inducing another to engage in gambling, with the intent to derive a profit therefrom; or

"(b) Participating in gambling and having, other than by virtue of skill or luck, a lesser chance of losing or a greater chance of winning than one or more of the other participants."

Nevertheless, the petitioner contends that the enactment of the gambling code has not changed the common law public policy of this state as to the nonenforcement of gambling debts. He points to C.R.S. 1963, 40-10-13,[1] cited by the court of appeals in *Condado Aruba Caribbean Hotel v. Tickel,* 39 Colo. App. 51, 561 P.2d 23 (1977). He also relies upon earlier Colorado cases, *e.g., Eldred v. Malloy,* 2 Colo. 320 (1874) and *Maher v. Van Horn,* 15 Colo. App. 14, 60 P. 949 (1900). Petitioner fails to recognize the distinctions between a sociable card game and gambling for profit, which distinction has received legislative recognition.

In *Tickel* the court of appeals dealt with a gambling debt owed to a "for-profit" gambling business. The court held that the common law policy evinced by C.R.S. 1963, 40-10-13, was implicit in the legislature's declaration "restraining any activities related to gambling conducted *for profit, when not specifically sanctioned by statute.*" (emphasis added). *See* sections 18-10-101 and 102.

The particular poker game, which gave rise to the debt that is the subject of this litigation, *is* specifically sanctioned by the new code. Section 18-10-102(2). It was "social gambling," a game incidental to a bona fide social relationship, participated in by natural persons in no way connected to professional gambling. *See People v. Wheatridge Poker Club,* 194 Colo. 15, 569 P.2d 324 (1977).

Because of the new code's clear expression of public policy, the policy of C.R.S. 1963, 40-10-13, is no longer applicable to "social gambling." *See Hessick v. Moynihan,* 83 Colo. 43, 262 P. 907 (1927). Since such activity does not constitute "gambling" as statutorily defined, it is not "discountenanced" by the spirit of our laws. *Eldred v. Malloy,*

---

[1] "Gaming contracts void. — All contracts, promises, agreements, conveyances, securities and notes made, given, granted, executed, drawn or entered into, where the whole or any part of the consideration thereof shall be for any money, property or other valuable thing won by any gaming or by playing at cards, or any gambling device or game of chance, or by betting on the side or hands of any person gaming, or for the reimbursing or paying any money or property knowingly lent or advanced at the time and place of such play, to any person or persons so gaming or betting, shall be utterly void and of no effect. No assignment of any bill, bond, note or other evidence of indebtedness, where the whole or any part of the consideration for such assignment shall arise out of any gaming transaction, shall in any manner offset the defense of the person or persons making, entering into, executing or giving such instruments so assigned, or the remedies of any person interested therein."

*supra.* Therefore, an action may lie to enforce a claim arising from the activity.

The judgment is affirmed.

MR. JUSTICE GROVES dissents.

MR. JUSTICE HODGES does not participate.