**Larry D. HOBBS, Appellant
(Defendant),**

**v.**

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 87–296.**

Supreme Court of Wyoming.

July 20, 1988.

Daniel G. Blythe and Linda S. Lewis, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Paul S. Rehurek, Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Larry D. Hobbs challenges his conviction on three counts of professional gambling as proscribed by § 6–7–102(b), W.S.1977. This conviction resulted from appellant's involvement in a lucrative bookmaking operation in Cheyenne, Wyoming.

The primary question presented for review is whether the statutory definition of professional gambling is unconstitutionally vague. In addition, the State, as appellee, questions appellant's standing to present his vagueness challenge.

We affirm.

Appellant describes the issue in this manner:

"THE DISTRICT COURT ERRED IN FAILING TO DISMISS THE CHARGES AGAINST APPELLANT IN THAT WYOMING STATUTE 6–7–101's DEFINITION OF PROFESSIONAL GAMBLING (SPECIFICALLY AS IT RELATES TO PROFIT) IS VAGUE, AMBIGUOUS, AND ALTHOUGH IT IS A STATUTE WHICH IS PENAL, IS NOT WRITTEN SO THAT A PERSON OF ORDINARY INTELLIGENCE CAN UNDERSTAND IT."

The State articulates its standing issue as:

"WHETHER THE APPELLANT HAS STANDING TO RAISE A VAGUENESS OBJECTION TO W.S. 6–7–101(a)(viii)(A) (PROFESSIONAL GAMBLING)?"

During the period of July 1986 through February 1987, appellant and another individual, Harold Hill, were involved in the business of accepting monetary wagers placed on the outcome of sporting events. "Clients" of this enterprise were given weekly betting sheets listing the games and betting possibilities. Each client was given a personal identification number and telephone numbers to use when placing bets. Clients were also informed of the pay-off procedure which required that losing bettors were to place any money lost in an envelope marked with their individual number on the outside for delivery to appellant or Mr. Hill. Also, a fee of one dollar per every ten dollars bet was assessed on losses.

Appellant and Mr. Hill met their clients in various area bars on Wednesdays to settle accounts. Certain precautions were employed to avoid detection by law enforcement authorities. All transactions were in cash, and bettors were requested to not talk about this business in public. In addition, clients were instructed that, when appellant or Mr. Hill answered the telephone to accept a wager, they would answer "L.D." or "H.H.," and, should the bettor hear any other answer, he was to hang up.

On October 20, 24, and 31, 1986, several bets were placed with this book-making service by an informant assisting the Division of Criminal Investigation. The bets totaled $140, and the informant lost each bet. The informant paid $154 to appellant and Mr. Hill which represented his losses plus the surcharge. On February 11, 1987, appellant and Mr. Hill were arrested while they were in the process of settling accounts with bettors. Appellant's house was searched pursuant to a warrant, and records pertaining to the gambling operation were seized. The gambling records revealed that Mr. Hill was a salaried employee of appellant, that, with respect to the informant's bets, appellant's expenses were less than $154, and that it was appellant's intent to generate an income.

By criminal complaint, appellant was charged with eight counts of professional gambling and one count of conspiracy to commit professional gambling in contravention of §§ 6–7–102(b) and 6–1–303(a), W.S. 1977. Among various pretrial motions filed by appellant was a motion to dismiss in which he sought dismissal on the ground that the statutes under which he was charged were unconstitutionally vague.

A motion hearing was held on May 15, 1987, at which time appellant presented evidence in the form of testimony by a University of Wyoming English professor and an accountant/attorney. Both witnesses testified that the definition of profit found in § 6–7–101(a)(ix), W.S.1977, and incorporated into the definition of professional gambling in § 6–7–101(a)(viii), W.S.1977, was ambiguous and did not make sense. The district court did not rule on the motion at that time.

Subsequently, appellant and the State entered into a stipulation whereby appellant waived a jury trial and agreed to a trial before the court on a series of stipulated facts consisting of the facts of the offenses

as set out above. In return, the State apparently agreed to dismiss all but three counts of professional gambling. Trial was held on June 14, 1987, and the district court entered a "verdict" of guilty on each count on July 6, 1987. By a decision letter dated June 17, 1987, the district court denied appellant's motion to dismiss. At the sentencing hearing held October 30, 1987, appellant received three concurrent sentences of eighteen to thirty-six months at the Wyoming State Penitentiary, with imposition of the sentences being suspended and appellant being placed on supervised probation for three years. An order to that effect was entered on November 16, 1987, and this appeal was perfected.

Appellant was convicted of engaging in professional gambling in violation of § 6-7-102(b), which provides:

"A person who engages in professional gambling commits a felony punishable by imprisonment for not more than three (3) years, a fine of not more than three thousand dollars ($3,000.00), or both."

Professional gambling, a felony, is distinguished in the statute from mere gambling which is only a misdemeanor. Section 6-7-102(a), W.S.1977. Professional gambling is given two definitions in § 6-7-101(a)(viii). The definition under which appellant was convicted is:

"Aiding or inducing another to engage in gambling, with the intent to derive a profit therefrom[.]" Section 6-7-101(a)(viii)(A).

Correspondingly, "profit" is defined in § 6-7-101(a)(ix) as:

" 'Profit' means benefit other than a gain, which is realized or unrealized and direct or indirect, including benefits from proprietorship, management or unequal advantage in a series of transactions."

Finally, "gain" is defined in § 6-7-101(a)(ii), W.S.1977, in this manner:

" 'Gain' means the direct realization of winnings[.]"

Appellant contends that the definition of "professional gambling," by incorporating the definition of "profit" as "benefit other than a gain," is nonsensical, ambiguous, and not subject to being understood by an individual of ordinary intelligence, and therefore it is unconstitutionally vague. We cannot agree.

 As a threshold matter, we first address the State's argument that appellant lacks standing to raise a vagueness challenge to this statute. While we would agree that appellant lacks standing to launch a facial challenge to the statute, we observe that appellant has limited his constitutional attack to the statute's application to him under the facts of this case. This is the posture appellant adopted in his motion to dismiss and continues to adhere to upon appeal. Appellant is not contending that the statute is unconstitutional on its face, although his arguments occasionally veer across the rather blurred distinction between a "facial" versus an "as applied" challenge.

In *Armijo v. State*, Wyo., 678 P.2d 864 (1984), Mr. Armijo challenged the constitutionality of a criminal statute by positing a series of hypothetical situations in which the statute arguably could reach innocent conduct as well as conduct the legislature intended to proscribe. In holding that Mr. Armijo lacked standing to make this argument, we said:

"With respect to his standing to raise such an issue the rule is that, with the limited exception of challenges to statutes that broadly prohibit speech protected by the First Amendment, a party must demonstrate the manner in which his own rights are adversely affected in light of the circumstances before the court in order to present his constitutional challenge. The Supreme Court of the United States has expressed the rule in this manner:

'A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. * * *' *County Court of Ulster County, New York v. Allen*, 442 U.S.

140, 154–155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979)." Id. at 868 (citations omitted).

Similarly, in *Sorenson v. State*, Wyo., 604 P.2d 1031, 1034 (1979) (quoting from *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975), and *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561, reh. denied 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963)), we stated, " '[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " (Footnote omitted.) See also *Carfield v. State*, Wyo., 649 P.2d 865 (1982), and *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Appellant does have standing to address a vagueness challenge to the statute as it has been applied to his conduct. The extent of our review of the statute's constitutionality, however, is limited accordingly.

■ Having determined that we are not reviewing a facial challenge and that appellant has standing to attack the constitutionality of the professional gambling statute as it applies to his conduct, we next consider the applicable standard for evaluating appellant's vagueness argument. Recently, in *Britt v. State*, Wyo., 752 P.2d 426, 428 (1988), we stated:

"The constitutional standard for vagueness of a criminal statute has been defined by this court. 'An ordinance or statute is void for vagueness if it fails to give a person of ordinary sensibility fair notice that the contemplated conduct is forbidden.' *Keser v. State*, Wyo., 706 P.2d 263, 266 (1985), quoted in *Shunn v. State*, Wyo., 742 P.2d 775, 777 (1987). While there is a strong presumption of constitutionality, '[a] statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning and differ as to its application." ' *Jenkins v. Werger*, 564 F.Supp. 806 (D.Wyo., 1983), quoted in *Shunn v. State*, supra. ' "The underlying principle is that no man shall be held criminally liable for conduct which he could not reasonably understand to be proscribed." ' *Keser v. State*, supra, at 265–

266 (quoting *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954))." (Citation omitted.)

See also *Shunn v. State*, Wyo., 742 P.2d 775 (1987). The requirement of fair notice is a due process concept. *Armijo v. State*, supra; *Dover v. State*, Wyo., 664 P.2d 536 (1983). We must determine, therefore, whether appellant could reasonably understand that bookmaking is subject to the penalty for "professional gambling" as that term is defined in § 6–7–101(a)(viii).

■ Appellant urges that the definition of professional gambling is vague because it incorporates the word "profit" which is incomprehensibly defined as "benefit other than a gain." Appellant refers us to the testimony of his two expert witnesses at the motion hearing where both witnesses stated that the definition of profit did not make sense. The thrust of appellant's argument is that to define profit as excluding gain defies common understanding and renders the statute ambiguous, thus depriving him of fair warning that his activities fell within the prohibition against professional gambling. As the State correctly points out, however, appellant conveniently overlooks the definition of "gain" which is also found in the statute. It has been established by this Court that "[w]e do not analyze a vagueness challenge in a vacuum but rather in the context of the statute in which the language is incorporated." *Sorenson v. State*, 604 P.2d at 1035. "Gain" is defined as "the direct realization of winnings." Section 6–7–101(a)(ii). When this definition is incorporated into the definition of profit in § 6–7–101(a)(ix), any ambiguity disappears, and the statute reads:

" 'Profit' means benefit other than [the direct realization of winnings], which is realized or unrealized and direct or indirect, including benefits from proprietorship, management or unequal advantage in a series of transactions."

We also agree with the State that the definition of gain is used in the statute to distinguish simple gambling from professional gambling. "Gambling" is defined as "risking any property for gain,"

§ 6–7–101(a)(iii), W.S.1977, whereas "professional gambling" means, inter alia, "inducing another to engage in gambling, with the intent to derive a profit [other than direct winnings] therefrom." We conclude that a person of ordinary sensibility has fair notice and must reasonably understand that bookmaking falls within the statutory definition of professional gambling as "[a]iding or inducing another to engage in gambling, with the intent to derive a profit therefrom," with profit defined as described. Further, any doubt as to appellant's understanding that his book-making activities were prohibited as professional gambling is dispelled by his employment of precautionary and evasive measures to avoid law enforcement detection.

In addition, we find further support for upholding the constitutionality of these provisions in the Colorado Supreme Court's treatment of a vagueness challenge to Colorado's substantially identical professional gambling statutes. Wyoming's gambling provisions were drawn from the Colorado statutes. Lauer, *Goodbye 3–Card Monte: The Wyoming Criminal Code of 1982*, XIX Land & Water L.Rev. 509, 571 (1984). The Colorado provisions, in turn, were derived in part from the Model Anti–Gambling Act proposed by the National Conference on Uniform State Laws (1952). *People v. Wheatridge Poker Club*, 194 Colo. 15, 569 P.2d 324 (1977). Colorado's definition of professional gambling is identical to Wyoming's. Section 18–10–102(8), C.R.S. 1973. Colorado, however, defines "gain" and "profit" in the same subsection. Section 18–10–102(1), C.R.S. 1973 provides:

" 'Gain' means the direct realization of winnings; 'profit' means any other realized or unrealized benefit, direct or indirect, including without limitation benefits from proprietorship, management, or unequal advantage in a series of transactions."

Although the wording in the definition of profit is slightly at variance with the definition in Wyoming's statutes, we perceive that it means the same thing. In *People v. Wheatridge Poker Club*, the Colorado Supreme Court addressed an argument that the definition of profit in the Colorado statute was unconstitutionally vague. In rejecting this argument, the Colorado Supreme Court, in language equally applicable to the instant case, said:

"When this section is read in the context of the gambling statute it is perfectly apparent that its thrust is to prohibit activities which derive a substantial benefit from the promotion and operation of gambling. The defendants' activities fall clearly within the ambit of the statutory prohibition, for the profit to the defendants comes directly and for all practical purposes exclusively from the gambling activity itself." Id., 569 P.2d at 328.

See also *United States v. Marchman*, 399 F.Supp. 585 (E.D.Tenn.1975), where a vagueness challenge to Tennessee's gambling statutes, which incorporate "gain" and "profit" definitions identical to those in Colorado's statutes, was summarily rejected.

Although by separating the definitions of "gain" and "profit" into different paragraphs of § 6–7–101(a) the Wyoming legislature did not enhance the clarity of the statute, we find it inconceivable that appellant harbored any doubts or lacked fair warning that bookmaking was encompassed within the statutory definition of professional gambling. Consequently, appellant's vagueness challenge must fail.

Affirmed.