9 P.3d 1153 (2000)
Robert LEICHLITER, d/b/a Top Hat Lounge, Plaintiff-Appellee,
v.
STATE LIQUOR LICENSING AUTHORITY, DEPARTMENT OF REVENUE, STATE OF COLORADO, Defendant-Appellant.
No. 99CA0119.
Colorado Court of Appeals, Div. I.
January 20, 2000.
Rehearing Denied April 6, 2000.
Certiorari Denied October 10, 2000.
*1154 Patrick H. Renworth, Fort Collins, Colorado, for Plaintiff-Appellee.
Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendant-Appellant.
Opinion by Judge DAVIDSON.
This is an appeal from the judgment entered in a C.R.C.P. 106(a)(4) proceeding reversing the action of the Colorado Department of Revenue Liquor Licensing Authority (Liquor Authority) in suspending the liquor license of plaintiff, Robert Leichliter, d/b/a Top Hat Lounge, for permitting gambling on its premises. The primary issue is whether the National Collegiate Athletic Association (NCAA) basketball pool held on the premises was incidental to a bona fide social relationship. We agree with the trial court that it was and therefore affirm.
The relevant facts as set forth in the trial court's order are not in dispute. On March 25, 1998, two investigators from the Liquor Authority went to the Lounge on an unrelated complaint. While there, the investigators noticed a grid for an NCAA basketball pool on a shelf on the back bar and, at their request, were allowed to participate in the pool. Based upon this, the Liquor Authority issued an order to show cause to plaintiff alleging a violation of the Colorado Liquor Code relating to the prohibition of gambling at an establishment licensed to serve alcoholic beverages.
Under the Colorado Liquor Code, § 12-47-901(5), C.R.S.1999, with exceptions not relevant here, a licensed retailer may not authorize or permit gambling on its premises. "Gambling," as used in this statute has the same meaning as "gambling" in the criminal code, see Brownlee v. State, 686 P.2d 1372 (Colo.App.1984), and includes, inter alia, risking money or other things of value for gain contingent, in whole or part, upon the happening of a sporting event over which the person taking a risk has no control. See § 18-10-102(2), C.R.S.1999. However, any game, wager, or transaction which is incidental to a bona fide social relationship, is participated in only by natural persons, and in which no person is participating, directly or indirectly, in professional gambling, is excluded from the definition of gambling. See § 18-10-102(2)(d), C.R.S.1999.
After a hearing on the alleged violation, the hearing officer determined that the basketball pool was not incidental to a bona fide social relationship and, therefore, constituted *1155 illegal gambling in violation of § 12-47-901(5), C.R.S.1999, and regulation 47-922 A 1., 1 Code Colo. Reg. 203-2 (prohibiting licensee from authorizing or permitting gambling on the premises). Plaintiff's liquor license was suspended for ten days, but six days of the suspension were deferred for one year pending proof of any future violation.
Plaintiff then instituted this C.R.C.P. 106(a)(4) action for review of the Liquor Authority's decision. The trial court reversed after determining that the hearing officer's finding that the basketball pool was not a game, wager, or transaction which was incidental to a bona fide social relationship was clearly erroneous, unsupported by substantial evidence, and contrary to law. On appeal, the Liquor Authority argues that this was error. We agree with the trial court.
In order for a reviewing court to set aside a decision by an administrative agency, the decision must be clearly erroneous, without evidentiary support in the record, or contrary to law. Brownlee v. State, supra. Under C.R.C.P. 106(a)(4), the appropriate consideration for an appellate court is whether there is sufficient evidentiary support for the decision rendered by the administrative tribunal. The appellate court is not bound by any determination made by the trial court, but reviews the issues presented to that court de novo. See City of Colorado Springs v. Givan, 897 P.2d 753 (Colo.1995).
Here, the hearing officer based his determination that the activity did not constitute social gambling on his finding that there was no bona fide social relationship among the participants in the transaction because, although "the establishment was characterized as a friendly neighborhood bar, it is apparent that anyone could walk in and participate in the gambling activity." Indeed, argues the Liquor Authority, there could be no bona fide social relationship among the participants here because this was an "open" pool in which the individuals who participated did not necessarily know one another. We disagree.
The phrase, "incident to a bona fide social relationship" is not defined in the statute or Liquor Code regulations. However, it has been addressed in prior decisions of the supreme court.
In People v. Wheatridge Poker Club, 194 Colo. 15, 569 P.2d 324 (1977), the court held that poker playing for money in a social club that derived its profits solely from yearly membership dues, a set "per chair" fee, and in which members were brought together through advertisements and promotions for the sole purpose of gambling was not incidental to a bona fide social relationship. In Houston v. Younghans, 196 Colo. 53, 580 P.2d 801 (1978), however, the court determined that poker playing for money among friends at the home of one of the players was incidental to a bona fide social relationship. More recently, in Charnes v. Central City Opera House Ass'n, 773 P.2d 546 (Colo.1989), the court held that a fundraising event which featured gambling was incidental to a bona fide social relationship based on the fact that the event was limited to participants who, although not necessarily friends, were brought together for the common purpose of raising money and not solely for the purpose of gambling.
Although each of these decisions necessarily is fact-specific, from them we can conclude nevertheless that the phrase, "incidental to a bona fide social relationship," refers to a game or wager which is made available to participants who have some legitimate common relationship to one another other than to engage in gambling. For example, a typical office sports pool, although all participants usually are not friends, would likely fall into this category by virtue of the shared business purposes of the office employees.
Hence, the critical inquiry is whether the participants here came together for any shared purpose other than gambling. See Charnes v. Central City Opera House Ass'n, supra (raising money for the Opera House Association); Houston v. Younghans, supra (existing social friendship); People v. Wheatridge Poker Club, supra (no shared purpose except gambling).
Were it not for the participation of the two Liquor Authority investigators, the answer to this inquiry would not be difficult. Indeed, as set forth in the trial court's order, it was undisputed that this particular bar was a *1156 neighborhood gathering place with a regular and devoted clientele where "just all the different walks of life came in to have a drink and have conversation with friends." The patrons of the Lounge did not go there to gamble and would continue to patronize the establishment regardless of the availability of a basketball pool. There was no advertising of any sort outside the Lounge of the availability of a sports pool; patrons were not even told about the pool or encouraged to participate in it. The pool was a once-a-year event and the cost was $2 a square. With such small cost of participation and maximum winnings of $200, it was provided simply as entertainment for persons who otherwise came into the Lounge for a drink and camaraderie. The pool grid itself contained mostly first names, initials, or nicknames, and, except for the two investigators, plaintiff knew every person who had participated in the pool. In fact, in his testimony before the Liquor Authority, plaintiff gave lengthy and detailed facts about the background, family history, and relationships of numerous patrons whose names were on the grid.
Based on this, we would agree with the trial court that the determination that, under the circumstances here, the sports pool was not incident to a bona fide social relationship, would be clearly erroneous.
The question then becomes whether the participation of the two investigators, who by appearances were simply patronizing the Lounge, and, apparently in a gesture of western hospitality, were permitted to participate in the pool, render illegal that which otherwise was incidental to a bona fide social relationship among the other participants? The Liquor Authority maintains that it does. We do not agree.
Regardless whether occasional strangers were allowed to participate in the pool, the undisputed facts show that this particular bar provided a social gathering place for a close-knit portion of the local community. We cannot agree that this limited participation by the Liquor Authority investigators, whose purpose at the Lounge was unrelated to the existence of a sports poolthey were there to investigate the possibility of the Lounge serving alcohol to intoxicated personscould of itself change the fact that this once-a-year, $200 pool was available as incidental amusement to the regular patrons whose legitimate common relationship was to come to the Lounge "for a drink and conversation with friends."
Similarly, we also disagree with the Liquor Authority that the Lounge itself participated in the pool, in contravention of § 18-10-102(2)(d) (precluding participation by other than natural persons). The hearing officer found that any profit to the Lounge was "incidental" to the existence of the basketball pool. Moreover, even though the grid was drawn on paper which contained the Lounge logo, there was no evidence that the Lounge did anything more than safekeep the participants' money and have the grid available to bar patrons who wanted to participate in it. Cf. Charnes v. Central City Opera House Ass'n, supra (Association's conduct in running the game constituted a "significant level of participation" by a non-natural person, thereby taking case out of permissible social gambling exception). The grid in the pool was filled in only by individuals, and there was no soliciting or advertising outside the Lounge to encourage people to participate.
Accordingly, the judgment of the trial court is affirmed.
Judge METZGER and Judge VOGT concur.