Russell M. BOLES, Plaintiff–Appellant,

v.

Terry BARTRUFF, Jason Zwirn, John Lusk, and Karen Dietrich, Defendants–Appellees.

No. 08CA0069.

Colorado Court of Appeals, Div. I.

Aug. 6, 2009.

Rehearing Denied Sept. 3, 2009.*

* Taubman, J., would grant.

Russell M. Boles, Pro Se.

John W. Suthers, Attorney General, James X. Quinn, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROMÁN.

In this C.R.C.P. 106(a)(4) action, plaintiff, Russell M. Boles, appeals the trial court's judgment affirming a prison disciplinary conviction. He asserts that he was denied due process at his disciplinary hearing, that the evidence supporting his conviction was insufficient, that the search of his cell was invalid, and that he was not provided discovery. We affirm.

## I. Background

Plaintiff is an inmate in the custody of the Colorado Department of Corrections (DOC). Based on the discovery of two prescription pills in a dental floss container on a shelf in his assigned footlocker, plaintiff was charged with "Abuse of Medication," a Class II, Rule 14 violation of the DOC Code of Penal Discipline (COPD). After an administrative hearing before a DOC hearing officer, plaintiff was found to have violated the COPD. The administrative head later affirmed the decision of the hearing officer.

Plaintiff then brought this C.R.C.P. 106(a)(4) action seeking judicial review. The trial court affirmed the hearing officer's decision and plaintiff appealed.

## II. Due Process

Plaintiff contends the trial court erred in determining the DOC hearing officer did not violate his Fourteenth Amendment right to due process. Specifically, he argues the

hearing officer's prohibition on questioning the complaining officer about her alleged anti-semitism and her history of write-ups denied him due process in the disciplinary hearing. We disagree.

An inmate in a disciplinary hearing enjoys only the most basic due process rights. *Wolff v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Washington v. Atherton,* 6 P.3d 346, 347 (Colo.App.2000). Procedures that are essential in criminal trials where the accused, if found guilty, may be subjected to the most serious deprivations, are not rights universally applicable to prison disciplinary proceedings. *Wolff,* 418 U.S. at 566–67, 94 S.Ct. 2963; *Howard v. U.S. Bureau of Prisons,* 487 F.3d 808, 812–13 (10th Cir.2007).

Those due process rights available to inmates are (1) advance written notice of the claimed violation; (2) the ability to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action taken. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. 2963.

The right to call witnesses does not include confrontation or cross-examination, due to the "inherent danger" such situations may pose, as well as "the availability of adequate bases of decision without them." *Baxter v. Palmigiano,* 425 U.S. 308, 322, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The Supreme Court has admonished that "[m]andating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that *Wolff* left to the sound discretion of prison officials." *Id.*

Nonetheless, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify," but "so long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff.*" *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985); *see also* DOC Admin.

Reg. 150–01(IV)(E)(3)(j)(1), (3) (a hearing officer has discretion not to call, or limit questioning of, a witness who may be subject to verbal or physical harassment).

A division of this court has held that an inmate's right to due process has been violated when that inmate was denied the opportunity to call a witness. *See Villa v. Gunter,* 862 P.2d 1033, 1034–35 (Colo.App.1993). Federal courts have held the same. *See, e.g., Grossman v. Bruce,* 447 F.3d 801, 805 (10th Cir.2006) (denial of inmate's request to call complaining corrections officer violated inmate's due process; however, such error was harmless); *Serrano v. Francis,* 345 F.3d 1071, 1079–80 (9th Cir.2003) (violation of due process in denying inmate's request to call witness when no reason appeared on the record for denial); *Pannell v. McBride,* 306 F.3d 499, 503 (7th Cir.2002) (same); *Smith v. Mass. Dep't of Correction,* 936 F.2d 1390, 1400 (1st Cir.1991) (same); *Brooks v. Andolina,* 826 F.2d 1266, 1269 (3d Cir.1987) (same); *Mitchell v. Dupnik,* 75 F.3d 517, 525 (9th Cir.1996) (prison policy prohibiting calling witnesses to testify in disciplinary hearings violated due process); *Ramer v. Kerby,* 936 F.2d 1102, 1104–05 (10th Cir.1991) (prison policy prohibiting prisoners from calling staff members as witnesses violated due process); *Moran v. Farrier,* 924 F.2d 134, 137 (8th Cir.1991) (failure to call witness requested by prisoner violated internal prison regulations and inmate's due process).

However, our research has uncovered no case that has held that an inmate's right to due process was violated where, as here, the inmate's right to cross-examination was permitted but limited to the incident in question.

And while prison regulations are primarily designed to guide correction officials in administration of a prison and "[are] not designed to confer rights on inmates," *Sandin v. Conner,* 515 U.S. 472, 481–82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in certain circumstances, when an agency creates procedures for review, due process of law requires the agency to adhere to those procedures even if they exceed what is constitu-

tionally required. *Dep't of Health v. Donahue*, 690 P.2d 243, 249 (Colo.1984).[1]

■ Here, plaintiff was allowed to call and question the complaining officer regarding the discovery of the prescription pills in his cell, but was denied the opportunity to question the officer about (1) her feelings toward his religion, (2) her fears and prejudices against him, (3) other items she allegedly removed from his footlocker, and (4) the number of write-ups she had authored. The hearing officer asked plaintiff to illustrate the types of questions he wished to ask the complaining officer. Thereafter he explained to plaintiff that he believed the questions would go beyond the discovery of the pills and were likely to harass the complaining officer, and ultimately denied plaintiff's request.

We conclude plaintiff received adequate due process, because unlike those cases in which an inmate's request for a witness was denied outright and without justification, the hearing officer here provided plaintiff with an opportunity to question the complaining officer about the incident in question, provided him an opportunity to explain the proposed line of questioning, and only denied those questions he believed to be harassing. As the Supreme Court stated in *Baxter* and *Ponte*, the right to call witnesses does not include the right to cross-examine witnesses. So long as the reasons provided for limiting cross-examination are logically related to institutional safety or correctional goals, the explanation meets the due process require-

ments outlined in *Wolff*. *Ponte*, 471 U.S. at 497, 105 S.Ct. 2192; *Baxter*, 425 U.S. at 322, 96 S.Ct. 1551.

■ Inmates have the right to individualized balancing of the importance of their proposed evidence against the interests of the institution. *See Ramer*, 936 F.2d at 1104–05. Thus, as discussed, a blanket prohibition of testimony without any individualized analysis would violate due process. *Id.* Here, the hearing officer listened to plaintiff's request to cross-examine the complaining officer, ruled on that request and stated the reason for his ruling: plaintiff's questioning would be irrelevant and would constitute harassment. *See* DOC Admin. Reg. 150–01(IV)(E)(3)(j)(3) ("In no event should an accused offender, or his representative, be allowed to question, or to continue addressing questions to a witness, when it appears that the questions are primarily intended to harass the witness or are unduly repetitious or irrelevant.").[2]

In determining whether the hearing officer limited cross-examination based on his determination that plaintiff's questions were either irrelevant or harassing, we must accord due deference to the decision of the hearing officer. *See Baxter*, 425 U.S. at 321–22, 96 S.Ct. 1551 (the extent to which prisoners may confront and cross-examine witnesses should be left to the sound discretion of prison officials and administrators). Affording proper deference to the hearing officer's decision, we conclude plaintiff's due process rights were not violated.[3]

---

1. The Colorado Department of Corrections has promulgated extensive regulations with regard to prison disciplinary hearings. Those regulations provide an inmate's right to request the testimony of witnesses at hearings, DOC Admin. Reg. 150–01(IV)(E)(3)(j)(1); however, the regulations do not provide inmates with the absolute right to confront and cross-examine witnesses in disciplinary hearings if, in the judgment of the hearing officer, there are sound reasons for denying confrontation or cross-examination. DOC Admin. Reg. 150–01(IV)(E)(3)(j).

2. Harassment is not defined in the regulations. In our view, however, the hearing officer was not constrained by a dictionary definition of the word; rather what constitutes harassment is within the sound discretion of the hearing officer, whose decision we will not disturb so long as it is not arbitrary or capricious.

3. In reaching this conclusion, we are mindful of the delicate balance that has been recognized between prisoners' religious guarantees and the legitimate concerns of prison administrators. *See Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir.2007). In addition, prisoners have access to grievance procedures. For example, under DOC Admin. Reg. 850–04, inmates are permitted to bring grievances concerning "policies and conditions within the institution that affect the offender personally; actions by employees and offenders; and incidents occurring within the institution that affect the offender personally." DOC Admin. Reg. 850–04(IV)(B)(3). AR Form 850–04B, titled "Grievance Subject List," includes as valid grievance subjects both religion and staff conduct.

### III. Sufficiency of the Evidence

Plaintiff also contends that there was insufficient evidence to support the hearing officer's determination that he was guilty of "Abuse of Medication." We disagree.

In C.R.C.P. 106(a)(4) proceedings, appellate review is limited to whether the governmental body's decision was an abuse of discretion or was made without jurisdiction, based on the evidence in the record before that body. C.R.C.P. 106(a)(4)(I); *Thomas v. Colo. Dep't of Corr.*, 117 P.3d 7, 10 (Colo.App.2004). When there is a challenge to the sufficiency of the evidence, the prison official's decision must be upheld if there is "some evidence" in the record to support it. *See Kodama v. Johnson*, 786 P.2d 417, 420 (Colo.1990).

The weight and credibility of a witness's testimony are committed to the discretion of the hearing officer. *Martinez v. Bd. of Comm'rs of Hous. Auth.*, 992 P.2d 692, 696 (Colo.App.1999). Appellate review of a district court's decision in a proceeding under C.R.C.P. 106(a)(4) is de novo. *Leichliter v. State Liquor Licensing Auth.*, 9 P.3d 1153, 1155 (Colo.App.2000).

An inmate commits "Abuse of Medication," a Class II, Rule 14 violation of the COPD, "when he, in any way, stores, saves, gives away, possesses, or removes any prescription medication without authorization." DOC Admin. Reg. 150–01(IV)(D).

The incident report, the notice of charge, and the testimony of the complaining officer established that during a routine shakedown of plaintiff's cell two prescription pills were found wrapped in tissue paper inside a dental floss container on a shelf in plaintiff's footlocker. In defense, plaintiff argued that he had a self-medication card for the pills and had no need to hide them. Accordingly, he argued that the pills were planted by either the complaining officer or his former cellmate.

Nevertheless, as noted, the weight and credibility of a witness's testimony are committed to the discretion of the hearing officer. *Martinez*, 992 P.2d at 696. Thus, although plaintiff claims that he did not hide the medication, there is sufficient evidence to support the hearing officer's determination that plaintiff saved or stored the two pills in his dental floss container and was guilty of "Abuse of Medication." Accordingly, we will not reverse that determination on appeal. *See Kodama*, 786 P.2d at 420.

To the extent plaintiff argues that the "some evidence" standard is insufficient to support the DOC's actions in taking away any earned time or good time credits for a disciplinary conviction, we note that this argument has been rejected. *See Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (the revocation of good time comports with the minimum requirements of procedural due process if the findings of the prison disciplinary board are supported by "some evidence" in the record); *see also Villa*, 862 P.2d at 1034. Therefore, we conclude that plaintiff is not entitled to additional due process protections based on the hearing officer's imposition of a sanction that included loss of thirteen days good time.

### IV. Other Issues

#### A. Discovery

We reject plaintiff's contention that the trial court erred in refusing to allow him to conduct discovery.

Review under C.R.C.P. 106(a)(4) is conducted "based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I). No new evidence is allowed and the reviewing court does not independently weigh the evidence. *See Kodama*, 786 P.2d at 420; *Hazelwood v. Saul*, 619 P.2d 499, 501 (Colo.1980).

Therefore, because no new evidence may be considered by the trial court in reviewing the hearing officer's determination, we conclude that plaintiff was not entitled to conduct discovery in the trial court regarding any exculpatory evidence that allegedly was not admitted at his disciplinary hearing.

#### B. Search of Cell

Finally, we reject plaintiff's contention that his disciplinary conviction must be reversed because the DOC violated Admin.

Regs. 300–06(IV)(H)(4) and 850–06(IV)(E)(5) by allowing the search of his cell to be performed by only one officer. Contrary to plaintiff's contentions, these regulations do not require that any search or inventory be performed by two DOC employees, but merely provide that searches and inventories be performed by two employees "when possible." Hence, we conclude that there is no basis for reversal on these grounds.

The judgment is affirmed.

Judge LICHTENSTEIN concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

Because I would conclude that plaintiff, Russel M. Boles, was denied due process at his disciplinary hearing since he was not allowed to cross-examine the complaining officer about her alleged anti-semitism, I respectfully dissent.

As the majority notes, plaintiff was found to have violated a provision of the Code of Penal Discipline (COPD) of the Department of Corrections entitled, "Abuse of Medication," a class II, Rule 14 violation. The charge was based on the alleged discovery of two prescription pills in a dental floss container on a shelf in his assigned footlocker. At the hearing, three witnesses testified: (1) a prison official who simply related the charging incident report filed against plaintiff, (2) the complaining officer, who testified that she found the two pills in plaintiff's dental floss container, and (3) plaintiff, who denied the allegations against him. Because there were no other witnesses, the case turned on the issue of credibility.

Plaintiff sought to impeach the complaining officer's credibility, inter alia, because of her alleged anti-semitism. The hearing officer refused to allow plaintiff to conduct any cross-examination on these issues, advising plaintiff that if he had any concerns about the propriety of the complaining officer's conduct he should raise them at a grievance hearing.

## I. Applicable Law

In a C.R.C.P. 106(a)(4) proceeding, review is limited to whether the governmental body's decision was an abuse of discretion or was made without jurisdiction. An abuse of discretion occurs, as relevant here, when an agency misinterprets or misapplies governing law. *See Gallegos v. Garcia,* 155 P.3d 405, 406 (Colo.App.2006).

In *Wolff v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the seminal procedural due process case involving prison inmates, the Supreme Court held that the limited due process rights to which inmates are entitled are advance written notice of an alleged violation, the ability to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals, and a written statement of the evidence relied on and the reasons for the disciplinary action taken. The *Wolff* Court declined to hold inmates' due process rights extended to confrontation or cross-examination of witnesses. However, the *Wolff* Court acknowledged that there was "a narrow range of cases where interest balancing may well dictate cross-examination...." *Id.* at 568–69, 94 S.Ct. 2963; *Smith v. Mass. Dep't of Corr.,* 936 F.2d 1390, 1399 (1st Cir.1991).

Later, as the majority notes, in *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Supreme Court recognized that prison officials "may be required to explain, in a limited manner, the reasons why witnesses were not allowed to testify," "but so long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff.*"

When an agency creates procedures for review, due process of law requires the agency to adhere to those procedures even if they exceed what is constitutionally required. *Dep't of Health v. Donahue,* 690 P.2d 243, 249 (Colo.1984); *Williams v. Colo. Dep't of Corr.,* 926 P.2d 110, 112 (Colo.App.1996).

Thus, I believe that defendants were required to comply with the due process protections provided by Colorado's prison regu-

lations even in light of the decision by the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, which limited the creation of liberty interests protected by due process when those asserted liberty interests were established by internal prison regulations. In *Sandin*, the court held that "these interests will be generally limited to freedom from restraint which ... imposes a typical and significant hardship on the inmate in relation to the ordinary incidence of prison life." *Id.* at 484, 115 S.Ct. 2293. Significantly, this language does not limit liberty interests to the above-described circumstances. Further, neither the district court, nor the defendants on appeal assert that *Sandin* is a barrier to plaintiff's due process claim.

Additionally, other appellate courts have found due process violations of inmates' rights without addressing *Sandin*. *See, e.g., Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir.2007) (prison officials violated inmate's due process rights by refusing to produce and review videotape of alleged assault for inmate's use at disciplinary hearing, which inmate asserted would refute charges against him); *Piggie v. McBride*, 277 F.3d 922 (7th Cir.2002) (inmate's due process rights were violated by prison official's refusal to view or permit him access to surveillance tape that inmate said was exculpatory); *Ayers v. Ryan*, 152 F.3d 77 (2d Cir.1998) (prison official violated inmate's due process rights by failing without rational explanation to obtain the testimony of witnesses requested by inmate during disciplinary hearing).

In any event, the *Sandin* Court stated that prisoners retained their right to invoke the First Amendment where appropriate and could draw on state judicial review where available. *Sandin*, 515 U.S. at 487 n. 11, 115 S.Ct. 2293. Here, the underlying basis of plaintiff's claim is alleged violation of his First Amendment right to free exercise of his religion.

Several federal courts have allowed inmates to pursue freedom of religion claims, concluding that they are not barred by *Sandin*. *See Davis v. Biller*, 41 Fed.Appx. 845 (7th Cir.2002) (not selected for publication) (*Sandin* did not apply to inmate's First Amendment claim that he was denied access to his Bible and to religious services while in segregation); *Nyholm v. Pryce*, 2009 WL 1106528 (D.N.J. No. 08–4824 RMB, Apr. 20, 2009) (unpublished order) (inmate could pursue claim that he was prohibited from attending religious services during confinement in administrative segregation); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir.2000) (inmate's claim that he was kept in administrative segregation in retaliation for filing civil rights suits against prison officials was not foreclosed by *Sandin* ).

In any event, even if plaintiff's claim is not viable under the Due Process Clause, I would still conclude that defendants abused their discretion by incorrectly applying the prison regulations discussed below. *See Gallegos v. Garcia*, 155 P.3d 405, 406–08 (Colo.App.2006) (inmate may obtain relief under C.R.C.P. 106(a)(4) when prison officials misinterpret or misapply prison regulations).

The Department of Corrections has promulgated detailed regulations concerning the presentation of witness testimony at disciplinary hearings. One regulation provides, "[T]he offender should be permitted to offer explanation, defense, or rebuttal to the charge.... An offender's defense should be relevant to the specific charge and may be limited at the discretion of the hearing officer or board." DOC Admin. Reg. 150–01(IV)(E)(3)(i)(2). As relevant here, the regulations also provide that an offender should have the right to request the testimony of witnesses at the hearing and that DOC employees should cooperate with all hearing officers' requests to testify. Further, "witnesses may be limited by the hearing officer ... if their testimony is determined to be irrelevant, incompetent, or unduly repetitious and that determination is documented in the record. The offender may request testimony of persons who witnessed and/or investigated the violations charged, whenever feasible." DOC Admin. Reg. 150–01(IV)(E)(3)(j)(1). An additional regulation provides, "In no event should an accused offender, or his representative be allowed to question, or to continue addressing questions to a witness, when it appears that the questions are primarily intended to harass the witness or are unduly

repetitious or irrelevant." DOC Admin. Reg. 150–01(IV)(E)(3)(j)(3).

Because DOC has promulgated these procedures, they establish the requirements of due process at prison disciplinary hearings.

## II. Analysis

At the disciplinary hearing, plaintiff indicated that he wished to question the complaining officer about her credibility because he recognized that this case involved his word against hers. The hearing officer immediately responded that he would not allow any such testimony, and that he would limit plaintiff's questions to those about the charged incident. He commented, "When you start saying you're going to question [her] on credibility, I guess what I'm looking at is that you're going to harass her." Plaintiff denied that was his intention and indicated that he wanted to ask the complaining officer questions "like how she feels about [his] Judaism." Again, the hearing officer indicated that he would not allow such questions. Plaintiff then responded that the complaining officer had previously taken items out of his locker like matzah and "some religious stuff." [1]

Once again, the hearing officer advised plaintiff that if he had any concerns about items taken from his cell, he was required to pursue them at a grievance hearing. The hearing officer added that he was not going to allow plaintiff to "harass the staff member" or ask her irrelevant questions.

In my view, the hearing officer violated plaintiff's due process rights and abused his discretion in not allowing plaintiff to ask any questions of the complaining officer concerning her alleged anti-semitism. Because this case turned on credibility, it was important for plaintiff to have an opportunity to establish that the complaining officer was biased against him because of his Jewish faith. If plaintiff could have shown that matzah and other religious items had been improperly taken from his cell, this evidence would have supported plaintiff's contention that the hearing officer was biased against him and falsely accused him of the abuse of medication offense.[2] Thus, the hearing officer erred in concluding that such evidence was irrelevant.

In criminal proceedings, the ability to impeach a witness by bias is broad. *People v. Sommers*, 200 P.3d 1089, 1096, (Colo.App. 2008). Further, motive is "always relevant to the question whether one did what is alleged against him and to the reason why" and "[t]he previous relations of the parties to any transaction may have been sufficient to excite motive." *Wagman v. Knorr*, 69 Colo. 468, 470, 195 P. 1034, 1035 (1921); *see also Belden v. State*, 73 P.3d 1041, 1083 (Wyo. 2003) (proof of motive is always relevant and admissible, particularly where the intent of the accused is at issue or the accused denies the commission of the crime).

Here, of course, the right to confront and cross-examine witnesses is necessarily circumscribed because of the prison environment. However, the regulations quoted above do not preclude all cross-examination. Rather, an accused offender should not be allowed to question or continue addressing questions to a witness "when it appears that the questions are primarily intended to harass the witness or are unduly repetitious or irrelevant." DOC Admin. Reg. 150–01(IV)(E)(3)(j)(3).

Here, plaintiff's proposed cross-examination was not irrelevant, repetitious, or harassing. Plaintiff questioned the complaining officer during the hearing, but was complete-

---

1. At the hearing, plaintiff did not identify what other religious items were allegedly taken from him, but in his brief on appeal, he asserts that the complaining officer had taken his phylacteries. Phylacteries, also known as tefillin, are "leather boxes with attached leather straps containing passages from the Torah that are used in Jewish prayer" by Conservative and Orthodox Jews. *See Searles v. Bruce*, 216 Fed.Appx. 812, 813 n. 2 (10th Cir.2007) (not selected for publication); *see also Webster's Third New International Dictionary* 1705 (2002) (defining "phylactery").

2. Phylacteries are "allowable personal faith property" and matzah is an allowable faith item of group property, which inmates may have or use in specified circumstances. *See* DOC Admin. Reg. 800–01(IV)(Q)–(R). While DOC employees may search personal faith property, they must treat such property with professional respect. DOC Admin. Reg. 800–01(IV)(P).

ly prohibited from asking her any questions about her alleged anti-semitism. As noted above, such a line of questioning would have been relevant. To the extent that there was a valid concern about such questioning being repetitious, the hearing officer could exercise his discretion to limit the extent and manner of such questions.

In my view, plaintiff's proposed questions regarding the hearing officer's alleged anti-semitism could not be considered harassment.

In construing an administrative rule or regulation, we apply the same rules of construction as we do when interpreting a statute. *See Woolsey v. Colo. Dep't of Corrections,* 66 P.3d 151, 153 (Colo.App.2002). When the statute or regulatory scheme does not define a word, it is appropriate to look to the dictionary definition of that term. *See Tidwell v. City & Cty. of Denver,* 83 P.3d 75, 82 (Colo.2003) (because statute did not define "pursuit," court looked to dictionary to determine its plain and ordinary meaning).

Harassment is defined as "words, conduct or action (usually repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." *Black's Law Dictionary* 733 (8th ed.2004). Plaintiff's intended questions were intended to serve the legitimate purpose of challenging the complaining officer's credibility. It is difficult for me to conclude that a proposed line of questioning would necessarily be considered harassment, particularly when no questions at all had been asked. As noted above, if plaintiff had been allowed to question the complaining officer about her alleged anti-semitism, the hearing officer could have limited such questions so that they would not be harassing. Indeed, during the initial colloquy at the hearing, plaintiff advised the hearing officer that he did not intend to directly ask the complaining officer if she was prejudiced against him because of his religion. Accordingly, he recognized that the questions he desired to ask could not be asked in a harassing manner.

Finally, recognizing a prison's legitimate interest in curtailing testimony that would be hazardous to institutional safety or correc-tional goals, I cannot conclude that a blanket prohibition against testimony about alleged anti-semitism is warranted. Otherwise, prison officials could persecute inmates on religious grounds, limited only by an inmate's possible relief in a grievance proceeding or civil rights case. *See Boles v. Neet,* 486 F.3d 1177 (10th Cir.2007) (when prison regulation impinges on an inmate's constitutional rights, it is valid if it is reasonably related to legitimate penological interests; plaintiff here, Russell Boles, established in that case that prison officials did not establish a legitimate penological interest for regulation that prohibited him from being transported from prison to hospital for eye surgery wearing Jewish religious garments). The legitimate interest in institutional safety and correctional goals does not justify decisions in every instance in favor of prison officials, as recognized by the numerous cases cited by the majority, in which courts have found due process violations in other circumstances. *See Villa v. Gunter,* 862 P.2d 1033, 1034 (Colo.App.1993); *see also Howard,* 487 F.3d at 814 (rejecting prison officials' contention that production of incident videotape would be "unduly hazardous to institutional safety or correctional goals"); *Substantive Rights Retained by Prisoners,* 37 Georgetown L.J. Ann. Rev. Crim. Proc. 944, 975–77 (2008).

For these reasons, I respectfully dissent. Because I would reverse on this issue, I do not address the other alleged errors asserted by plaintiff.