23CA1262 Farrow v CDOC 09-26-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1262
Fremont County District Court No. 22CV40
Honorable Lynette M. Wenner, Judge

Michael Farrow,

Plaintiff-Appellant,

v.

Executive Director of the Colorado Department of Corrections and Warden of Colorado State Penitentiary,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 26, 2024

Michael Farrow, Pro Se

Philip J. Weiser, Attorney General, Rebekah Ryan, Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Michael Farrow, an inmate in the custody of the Colorado Department of Corrections (DOC), appeals the district court judgment affirming his prison disciplinary conviction for hazardous liquid assault on staff under C.R.C.P. 106.5.  We affirm.

## I.     Background

¶ 2     Farrow was charged in a prison disciplinary proceeding with hazardous liquid assault on staff after Officer Anthony Vasquez reported that Farrow had spit on him during a prisoner escort.  According to Officer Vasquez's report, Farrow was slouched over during the transport, and when Officer Vasquez helped him to sit up, Farrow tilted his head back and spit at Officer Vasquez's face.

¶ 3     A hearing was held on the charge before a three-person board.  Farrow requested and was appointed an offender representative.  The hearing officer read Farrow the charge against him and the possible sanctions, and Farrow entered a plea of not guilty.  The DOC disciplinary officer then read the notice of charge into the record and presented evidence, including Officer Vasquez's report, the report of another correctional officer who had witnessed the incident, a cost memorandum identifying the requested amount of restitution, and a mental health assessment indicating that Farrow

1

was not experiencing significant mental health symptoms during the incident and could be held accountable for his actions.

¶ 4      After the disciplinary officer presented her case, the hearing officer asked Farrow if he wanted to make a statement or present evidence.  Farrow responded that he wanted to call three witnesses:

(1)   Dr. Hodge[1]: Farrow asserted that Dr. Hodge witnessed the incident and could testify that Farrow did not intentionally spit on Officer Vasquez.

(2)   Office of the Inspector General Investigator Christopher Barr: Farrow said that Investigator Barr had investigated a staff misconduct complaint that Farrow had filed and could testify about the results of that investigation. Farrow also claimed that Investigator Barr was a witness to two videos of the medical entryway where the incident occurred.  The hearing officer asked the disciplinary officer if there were any videos of the incident, and the disciplinary officer said she was not aware of any.

---

[1] Dr. Hodge's first name does not appear in the record.

(3)     Lieutenant Riley Nagl: Lieutenant Nagl was the shift commander during the incident, and Farrow asserted that he had "made sure the video evidence was collected" and saved to be available for the hearing.

¶ 5     The board denied Farrow's requests to call Dr. Hodge and Investigator Barr.  As to Dr. Hodge, the board concluded that the proposed testimony was irrelevant because only Farrow could testify about his intent.  As to Investigator Barr, the board explained that he was not present for the incident and his investigation into alleged staff misconduct was separate from and immaterial to the disciplinary proceeding.  But the board continued the hearing to allow it to conduct "due diligence" into Lieutenant Nagl's availability for testimony or access to video of the incident.

¶ 6     After the hearing, the disciplinary officer emailed Lieutenant Nagl and Investigator Barr to ask whether there was video footage of the incident.  Both said there was not.  Lieutenant Nagl elaborated:

> I am not sure why [Farrow] is convinced there is a video regarding this specific incident.  This was the third incident involving him on the day that it occurred.  All applicable video for the separate incidents were [sic] downloaded into the appropriate folders.  There was no body camera footage of the assault due to the

offender being evaluated by clinical services staff due to an emergent entry in intake of the offender.

¶ 7     The continued hearing was set approximately three weeks after the first.  That day, prison staff advised the hearing officer that the hearing would need to be rescheduled because Farrow was on a mental health watch.  The hearing officer declined to reschedule the hearing and proceeded in Farrow's absence, finding that Farrow "consistently goes on [mental health watch] or becomes disruptive prior to hearing" and had been "given multiple opportunities to attend [the] hearing."  The hearing officer also noted that Farrow had entered his plea and presented his defense at the first hearing, and "[t]he only question remaining was regarding video."

¶ 8     At the continued hearing, the hearing officer read the emails from Lieutenant Nagl and Investigator Barr into the record, finding that those emails sufficed to satisfy Farrow's request to call them as witnesses.  Based on those emails, the hearing officer found that there was no video footage because Farrow "was in medical."

¶ 9     The board found Farrow guilty and imposed sanctions of ten days in restrictive housing and $750 in restitution.  Farrow filed an administrative appeal, and the conviction was upheld.

¶ 10    Farrow then filed a complaint in the district court for judicial review under C.R.C.P. 106.5.  The magistrate judge entered an order affirming the conviction.  Farrow timely petitioned the district court for review of that decision, and the district court also affirmed the conviction.  Reviewing the matter de novo, the district court concluded that there was "more than 'some' evidence supporting Farrow's conviction" and that Farrow was provided due process.

## II.    Due Process

¶ 11    Farrow contends that the DOC violated his constitutional right to due process[2] by (1) denying his requests to call witnesses; (2) conducting the continued hearing in his absence; and (3) destroying or concealing exculpatory evidence.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 12    In reviewing a prison disciplinary conviction under C.R.C.P. 106.5, we sit in the same position as the district court and review its ruling de novo.  *Dawson v. Exec. Dir. of Colo. Dep't of Corr.*, 2014 COA 69, ¶ 6.  Our review is limited to determining whether the

---

[2] Farrow also asserts that the DOC violated his constitutional right to equal protection, but he does not develop this argument, so we decline to consider it.  *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

prison officials exceeded their jurisdiction or abused their discretion based on the evidence in the record before them. *Marymee v. Exec. Dir. of Colo. Dep't of Corr.*, 2014 COA 44, ¶ 5; *see also* C.R.C.P. 106(a)(4)(I); C.R.C.P. 106.5(a). Unless prison officials have misinterpreted or misapplied the law, we must uphold the decision if there is "some evidence" in the record to support it. *Dawson,* ¶ 7; *see also Kodama v. Johnson,* 786 P.2d 417, 420 (Colo. 1990).

¶ 13    Prison disciplinary proceedings must also comport with due process. *See Mariani v. Colo. Dep't of Corr.*, 956 P.2d 625, 628 (Colo. App. 1997). But "[a]n inmate in a disciplinary hearing enjoys only the most basic due process rights." *Id.* Those rights are limited to (1) the right to advance written notice of the charge; (2) the right to call witnesses and present a defense "when doing so does not interfere with the security and order of the institution"; and (3) a written statement from the hearing officer setting forth the reasons for the disciplinary action and the evidence relied on. *Id.*[3]

---

[3] Farrow does not challenge the adequacy of the written notice of the charge or the hearing officer's written statement. Nor does he challenge the sufficiency of the evidence to support his conviction, aside from his claim that the DOC destroyed or concealed evidence.

### B. Denial of Requests to Call Witnesses

¶ 14    Farrow first asserts that the hearing board denied him his due process right to call witnesses when it rejected his request to call Dr. Hodge and Investigator Barr and accepted an email from Lieutenant Nagl in lieu of testimony. We are not persuaded.

¶ 15    An inmate's due process right to call witnesses at a disciplinary proceeding is "not absolute" and "must be balanced against institutional needs and objectives." *Marymee*, ¶ 20. Thus, a hearing officer may deny a request to call witnesses when, among other things, such testimony would be irrelevant. *Id.* When the hearing officer denies such a request, they must document the denial and the reasons for the denial on the record. *Id.* at ¶ 21.

¶ 16    The hearing officer complied with that procedure. She first gave Farrow an opportunity to explain why he wanted to call the requested witnesses. She then documented on the record why she believed their testimony would be irrelevant in light of Farrow's explanation — Dr. Hodge, because he could not testify as to

7

Farrow's intent;[4] and Investigator Barr, because he was not present for the incident, and his employee misconduct investigation was entirely separate from the disciplinary proceeding. *See id.* at ¶ 27. Under the circumstances of this case, those evidentiary rulings did not deprive Farrow of due process. *See id.* at ¶¶ 23, 25 (holding that denial of request to call witness did not violate due process where witness was not present during incident and the proposed testimony would not have addressed the basis for the violation).

¶ 17    As to the third witness Farrow requested to call, Lieutenant Nagl, the hearing officer continued the hearing for the express purpose of investigating Farrow's representation that Lieutenant Nagl would testify as to the existence of videos of the incident. Between the two hearings, however, Lieutenant Nagl made clear via email that he would not so testify. To the contrary, he confirmed what the disciplinary officer had already told the hearing officer —

---

[4] Farrow sought to supplement the record with a report by Dr. Hodge stating that Farrow was "transported without apparent resistance," and he cites that report in his opening brief. But a party may not "supplement the record" with items that were not before the district court (or the hearing board). *People v. Ray*, 2012 COA 32, ¶ 14. We therefore do not consider that report.

that there was no video footage of the incident.  Another email from Investigator Barr confirmed the same thing.

¶ 18    Farrow argues that it was improper for the hearing officer to rely on the emails from Lieutenant Nagl and Investigator Barr in lieu of their live testimony.  We disagree that this procedure violated due process for four reasons.  First, the emails were not offered or relied on as substantive evidence of the charge; they were offered only to confirm that no additional evidence existed.  Second, they were cumulative of what the disciplinary officer had already represented.  Third, the rules of evidence, including the hearsay rule, do not apply in prison disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974); DOC Admin. Reg. 150-01(IV)(F)(3)(g)(4) (allowing for admission of hearsay evidence).  Fourth, an inmate has no due process right to confront and cross-examine adverse witnesses in such proceedings.  *Wolff*, 418 U.S. at 567-68; *Boles v. Bartruff*, 228 P.3d 183, 186-87 (Colo. App. 2009).

### C.    Denial of Right to Attend Hearing

¶ 19    Farrow next argues that the hearing board denied him his right to attend the hearing and present a defense by conducting the

9

continued hearing in his absence. He asserts that the hearing officer erred by concluding that he was at fault for his absence.

¶ 20    We agree with Farrow that the record does not support the hearing officer's finding that Farrow had "consistently [gone] on [mental health watch] or become[] disruptive prior to hearing[s]" in this case. The hearing was continued twice before the first hearing — the first time because Farrow was in the infirmary, and the second because Farrow's facility was unable to conduct the hearing due to COVID-19 protocols. Farrow appeared at the first hearing, and the hearing officer continued the hearing to allow for follow-up with Lieutenant Nagl. Farrow was on a mental health watch at the time of the continued hearing. Even if that absence could be attributed to Farrow — another point on which the record is insufficient — there is no indication that it was part of a pattern.

¶ 21    But while it might have been better for the hearing officer to continue the second hearing until Farrow could be present, Farrow was not denied his right to present a defense. *See Marymee*, ¶ 18. Farrow was present at the first hearing. He was appointed an offender representative and given the opportunity to make a statement and present evidence. Farrow asked several questions

10

and made several objections and arguments, each of which the hearing officer addressed. When Farrow insisted that there were videos of the incident, the hearing officer continued the hearing to allow the parties to determine whether any such video existed. The sole purpose of the second hearing was to address that issue, and no substantive evidence of the charge was presented.

¶ 22    Thus, Farrow was given the opportunity to present a defense at the first hearing, which addressed the substance of the charge.

### D.    Destruction of Evidence

¶ 23    Farrow also maintains that the DOC violated his due process rights by destroying or failing to preserve exculpatory video of the incident. But Farrow points to nothing in the record to support his allegation that such video existed. Our review is limited to the evidence in the record before the board. C.R.C.P. 106(a)(4)(I).

¶ 24    Indeed, the record uniformly indicates that no video existed. The disciplinary officer said she was not aware of any video. Lieutenant Nagl confirmed there was no video and explained why: Farrow was being evaluated by clinical services staff due to an emergent situation. Investigator Barr also checked the system and

found no videos. And the hearing officer found that there was no video of the incident because Farrow was "in medical" at the time.

¶ 25 Farrow disputes this point. Relying on a memorandum that was not part of the record before the hearing board, he asserts that prison staff were required to record all interactions with him. *See Higgins v. Colo. Dep't of Corr.*, 876 P.2d 124, 126 (Colo. App. 1994) (holding that petitioner may not assert error on ground not asserted at hearing). But Farrow's disagreement with the hearing board's factual findings does not show that the board abused its discretion. *Cf. Marymee*, ¶ 35 ("If the evidence is conflicting, the hearing officer's findings are binding on appeal, and we may not substitute our judgment for that of the fact finder."). To the extent Farrow asserts that prison staff should have done more to capture and preserve video of the incident, due process confers no such right.

## III. Other Arguments

¶ 26 Farrow raises a number of challenges to the procedures and rulings of the magistrate and district court, including that the magistrate judge improperly required Farrow to pay a filing fee; that the magistrate and district court evinced bias against him; and that the district court sanctioned the DOC's destruction of evidence.

¶ 27    But "our review in a C.R.C.P. 106.5 action is limited to the decision of the administrative body itself, and not that of the district court." *Id.* at ¶ 36. In other words, we independently review the board's decision with no deference to the district court's rulings. *Dawson*, ¶ 6. We therefore do not consider Farrow's arguments regarding the propriety of the magistrate or district court orders, neither of which has any bearing on our review of his conviction.

¶ 28    We also decline to revisit this court's previous denial of Farrow's request for access to the audio recording of his disciplinary hearing. *See FSDW, LLC v. First Nat'l Bank*, 94 P.3d 1260, 1262 (Colo. App. 2004) ("We generally will decline to revisit rulings of the motions division, especially when they reflect some discretionary consideration."). Farrow asserts that he is prejudiced by that denial because he cannot cite to specific points in the audio file to support his claim of error. But we have listened to the audio files of both hearings in their entirety, with particular focus on those portions of the hearing that are relevant to the claims Farrow makes on appeal.

IV.    Disposition

¶ 29    The judgment is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.

13