23CA2077 Brooks v CDOC 12-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2077
Logan County District Court No. 22CV46
Honorable Stephanie M.G. Gagliano, Judge

---

Keith Clayton Brooks, Jr.,

Plaintiff-Appellant,

v.

Executive Director of the Colorado Department of Corrections, and
Warden of Sterling Correctional Facility,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

---

Keith Clayton Brooks, Jr., Pro Se

Philip J. Weiser, Attorney General, Rachel Lieb, Assistant Attorney General,
Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiff, Keith Clayton Brooks, Jr., appeals the district court's judgment affirming his prison disciplinary conviction for Fighting Class I.  We affirm.

## I.     Background

¶ 2     Brooks is an inmate at the Sterling Correctional Facility operated by the Colorado Department of Corrections (CDOC).  While at that facility, Brooks was served with a Notice of Charge for Fighting Class I in violation of the Code of Penal Discipline for an altercation in the facility.  According to the notice, several inmates, including Brooks, "were engaged in a physical altercation hitting each other with closed fists," and the inmates ignored directives to stop fighting until prison staff used pepper spray on them.

¶ 3     At the disciplinary hearing, the hearing officer received an incident report, video footage of the incident, screenshots of that video footage, and anatomical examination reports of the inmates involved in the altercation.

¶ 4     The hearing officer also heard testimony from Brooks, who pleaded not guilty and asserted that he was acting in self-defense or defense of others.  Brooks didn't deny that the altercation took place or that he was part of it.  Instead, he testified that he "applied

1

force" to fellow inmate Johnny Moreno when he saw Moreno holding another inmate in a chokehold. He said Moreno then released the chokehold, and he followed Moreno asking, "Are you good?" to which Moreno answered, "Yeah, I'm good." Brooks explained,

> I'm not trying to downplay what I did, but I believe in that moment I acted in self-defense. I feel that the force was reasonable, that it was successful . . . . [A]s for the pursuit part of it, I just wanted to make sure that [Moreno] was clear on not engaging again.

¶ 5    The hearing officer found Brooks guilty of Fighting Class 1. Brooks filed an administrative appeal, and the Administrative Head upheld the decision.

¶ 6    Brooks filed a complaint in the district court for review of his conviction under C.R.C.P. 106.5. Brooks also filed a motion requesting a copy of the video footage of the altercation. The court denied that motion and later, in a detailed written opinion, it affirmed Brooks's disciplinary conviction.

¶ 7    In this appeal, Brooks challenges the denial of his request for access to the video footage, the sufficiency of the evidence to support his conviction, and the hearing officer's alleged bias. We address each issue in turn, construing Brooks's arguments

2

liberally, as we must, given his self-represented status. *See Minshall v. Johnston*, 2018 COA 44, ¶ 21.

## II. Due Process

¶ 8 We first address — and reject — Brooks's contention that the denial of access to the video footage violates his due process rights.[1]

### A. Standard of Review and Applicable Law

¶ 9 Due process challenges to a disciplinary hearing procedure are challenges to the CDOC's quasi-judicial action. *Garcia v. Harms*, 2014 COA 154, ¶ 10. Our review of such challenges under C.R.C.P 106.5 "is limited to whether prison officials exceeded their jurisdiction or abused their discretion." *Marymee v. Exec. Dir. of Colo. Dep't of Corr.*, 2014 COA 44, ¶ 5.

¶ 10 An inmate in a disciplinary hearing enjoys only the most basic due process rights. *Boles v. Bartruff*, 228 P.3d 183, 186 (Colo. App. 2009). Those rights are (1) advance written notice of the claimed

---

[1] We disagree with the CDOC's assertion that Brooks waived his due process argument because he didn't raise it before the district court. While Brooks didn't request the video footage or reference due process in his complaint, he filed a motion with the district court requesting a copy of the video and arguing that without it, he would "be prejudiced by the lack of an ability to cite the record," creating "a hardship that violates due process."

violation; (2) the ability to call witnesses and present documentary evidence when it isn't unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

¶ 11 An inmate's due process right to present documentary evidence may be violated if officials unjustifiably refuse the inmate's request to produce and review relevant video footage. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814-15 (10th Cir. 2007). To that end, inmates have a qualified right to access such videos. *Lennear v. Wilson*, 937 F.3d 257, 269-70 (4th Cir. 2019); *see also Whitmore v. Parker*, 525 F. App'x 865, 866 (10th Cir. 2013). However, the inmate's right must give way if the government establishes that disclosing the video in a particular case would be unduly hazardous to institutional safety or correctional goals. *Lennear*, 937 F.3d at 269-70; *see also Howard*, 487 F.3d at 814; *Crosby v. Fox*, 757 F. App'x 673, 678 (10th Cir. 2018).

B. Application

¶ 12 CDOC officials determined the video footage at issue was "security-sensitive." They explained,

4

> While the [inmates] are aware of the presence of security cameras within the facility, they do not know the exact angles of the cameras or their zoom/pan/tilt capabilities. If the footage were to be presented to the [inmate] population, it would divulge information on camera angles within the facility as well as the quality of the recordings.

¶ 13  Accordingly, the CDOC denied Brooks access to the video. The district court on review also denied Brooks's request to access the video, similarly reasoning that its disclosure "would disclose the location of security cameras which is deemed a security risk."

¶ 14  Brooks argues that denying him access to the video violated his due process right to present documentary evidence in his defense.

¶ 15  But the CDOC provided legitimate reasons for overcoming Brooks's right to the video: concerns about institutional safety if inmates were to learn the exact angles and zoom, pan, and tilt capabilities of the cameras in the facility. *See Lennear*, 937 F.3d at 269-70; *Howard*, 487 F.3d at 814; *Crosby*, 757 F. App'x at 678. Brooks doesn't present any evidence or argument challenging CDOC's reasoning.

¶ 16    And while a blanket rule barring inmate access to video evidence in all cases likely wouldn't pass constitutional muster, *see Lennear*, 937 F.3d at 270-71 (inmate rights to access videos must be assessed on an individualized basis, and categorical or absolute prohibitions don't satisfy due process), we discern no due process violation in this case.  The CDOC provided Brooks with access to screen shots from the video.  The hearing officer also watched the video in Brooks's presence during the hearing, summarizing exactly what he saw, and Brooks didn't at any point challenge the hearing officer's observations about what happened.  Indeed, Brooks essentially admitted to the incident as it was described, arguing only that his involvement was in self-defense or defense of others.

¶ 17    Accordingly, we conclude that Brooks's lack of access to the video footage of the altercation didn't violate his due process rights.

¶ 18    To the extent that Brooks challenges the district court's rejection of his request to supplement the record with evidence from the disciplinary hearings of the other inmates involved in the altercation, we again discern no due process violation.  Brooks doesn't explain how those hearing records have any bearing on his

conviction — which, as discussed below, was based on substantial evidence regarding his own involvement in the incident.

¶ 19 Finally, to the extent that Brooks suggests the rejection of his assertion of self-defense constitutes a violation of due process, we aren't persuaded. Rejection of Brooks's asserted defense isn't a due process issue but, instead, is a question regarding the sufficiency of the evidence.

### III. Sufficiency of the Evidence

¶ 20 We now consider Brooks's contention that insufficient evidence supported his disciplinary conviction for Fighting Class I. Specifically, he asserts that the evidence doesn't support either (1) a conviction for that offense or (2) the rejection of his defense of self-defense. We disagree.

### A. Standard of Review and Applicable Law

¶ 21 Again, our review is limited to whether the hearing officer exceeded his jurisdiction or abused his discretion in entering a disciplinary conviction against Brooks. *See Marymee*, ¶ 5.

¶ 22 When considering a challenge to the sufficiency of evidence supporting a prison disciplinary decision, we must "uphold the decision if it is supported by 'some evidence' in the record." *Burns*

*v. Exec. Dir., Colo. Dep't of Corr.*, 183 P.3d 695, 697 (Colo. App. 2008). Determining the credibility and weight of a witness's testimony are matters committed to the hearing officer's discretion. *Martinez v. Bd. of Comm'rs of Hous. Auth.*, 992 P.2d 692, 696 (Colo. App. 1999).

¶ 23 An inmate commits Fighting Class I when they "engage in a physical altercation including, but not limited to: exchange of punches, strikes, shoves, kicks, or any offensive physical contact with another offender that . . . causes bodily injury requiring medical treatment or requires a use of force to gain compliance." DOC Admin. Reg. 150-01(IV)(D)(6). Fighting Class II, by contrast, involves the same conduct but doesn't involve bodily injury requiring medical treatment or the use of force to gain compliance. DOC Admin. Reg. 150-01(IV)(E)(4).

¶ 24 Self-defense may be a defense to a disciplinary charge of fighting. DOC Admin. Reg. 150-01(IV)(D)(6), (E)(4). In regard to self-defense, the CDOC Code of Penal Discipline provides,

> A person is justified to defend themselves from what they reasonably believe to be the use or imminent use of physical force. Continuing to fight beyond what is reasonable to defend oneself, or re-engaging once the combatants

> have separated[,] can make the claim of self-
> defense invalid.

DOC Admin. Reg. 150-01(III)(BB).[2]

## B.    Application

¶ 25    The evidence from the disciplinary hearing supports the hearing officer's finding that Brooks engaged in Fighting Class I and his rejection of Brooks's defense of self-defense.  This includes the following evidence:

- an incident report from an officer stating that after reviewing the video footage of the altercation, she positively identified Brooks and other inmates "engaging in a physical altercation," after which they were escorted to the medical area for anatomical evaluations;

- video footage of the incident, showing that Brooks inserted himself into the ongoing altercation between other inmates, struck Moreno in the face, and then continued to follow Moreno around even after Moreno disengaged with the other inmates;

---

[2] This provision is now in subsection (CC), but it was in subsection (BB) at the time of the offense.

- screenshots from the video showing the inmates involved in the altercation, including Brooks;

- Brooks's testimony that he "applied force" to Moreno and continued to follow him around to "make sure that he was clear on not engaging again";

- anatomical examination reports showing that at least one of the inmates (not Moreno but another inmate) involved in the incident sustained injuries; and

- video footage showing inmates continuing to engage in the altercation after Brooks and Moreno were out of the video frame, ignoring directives to stop, and being pepper sprayed by prison staff to gain compliance.

¶ 26    This constitutes "some evidence" to support the hearing officer's finding that Brooks engaged in Fighting Class I. *Burns*, 183 P.3d at 697. Brooks argues that, at most, he engaged in Fighting Class II because there was no evidence that he caused Moreno or anyone else any bodily injury requiring medical treatment or that officers had to use the pepper spray or any other show of force to gain his compliance. *See* DOC Admin. Reg. 150-01(IV)(D)(6), (E)(4). But there was evidence suggesting that Brooks

may have continued to pursue and attempt to engage Moreno until prison staff were able to stop the entire altercation with a show of force that included using pepper spray on some inmates. Thus, there was some evidence that Brooks may have engaged in a physical altercation that required the use of force to gain compliance. And even if he didn't himself cause any injuries or require force to comply with prison staff's instructions, he could be responsible for the offense based on his participation in the group altercation that both caused injuries and ended only after a show of force. *Cf. Grissom v. People*, 115 P.3d 1280, 1284 (Colo. 2005) ("In . . . 'common enterprise' cases, where both parties are acting in concert to commit a threshold crime, but the principal ultimately commits a more serious crime than the complicitor initially intended, the complicitor can be held liable for the crime committed by the principal.").

¶ 27 As to the theory of self-defense, the hearing officer acknowledged that Brooks believed he had acted in self-defense or defense of another, but rejected that theory, explaining,

> [F]or whatever reason, [Brooks] chose to come from the other side of the pod and inserted [himself] into the altercation by striking . . .

11

> Moreno in the face and engaging [himself] into the offensive aspect of the altercation, which then [he] ended up pursuing the offender back across the pod. As another offender struck Moreno, [he] proceeded to stay within positioning of that offender and then follow them completely off camera.

¶ 28     The record supports the hearing officer's rejection of Brooks's self-defense theory. While Brooks cites evidence that might have supported a finding in his favor on that defense, we are required to uphold the decision where, as here, there is "'some evidence' in the record" to support it. *Burns,* 183 P.3d at 697.

¶ 29     Brooks certainly didn't act to defend himself. And even assuming that defending others falls within the CDOC's self-defense definition — something that isn't clear from the Code of Penal Discipline or from any of the authorities Brooks cites — the record supports a finding that Brooks didn't reasonably act in defending others. It's not clear that Brooks reasonably believed he needed to intervene to protect any of the inmates initially involved in the altercation; yet he willfully inserted himself into that altercation by striking Moreno in the face. *See* DOC Admin. Reg. 150-01(III)(BB). Brooks also may have continued to fight beyond what was reasonable, or may have unreasonably attempted to re-engage

12

Moreno, particularly when he continued to follow Moreno around the room even after Moreno had disengaged. *See id.* At a minimum, the evidence may have been ambiguous, and it was within the hearing officer's purview to resolve it and determine whether any self-defense or defense of others was reasonable. *See Sanchez v. People*, 820 P.2d 1103, 1108 (Colo. 1991) ("[T]he fact finder must weigh all relevant circumstances to determine whether a person asserting the defense of self-defense has acted as a reasonable person would act in similar circumstances.").

## IV. Bias

¶ 30    Finally, we turn to Brooks's contention that the hearing officer acted with actual bias by characterizing him as an aggressor and rejecting his self-defense theory. We aren't persuaded.

### A. Applicable Law

¶ 31    An administrative hearing officer is presumed to be impartial, and the party challenging the officer's action has the burden of proving otherwise. *Washington v. Atherton*, 6 P.3d 346, 347 (Colo. App. 2000). Actual bias is bias that "in all probability will prevent [a hearing officer] from dealing fairly with a party." *People in*

13

*Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011) (quoting *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002)).

¶ 32     To support a claim of bias or partiality on the part of a hearing officer, "an inmate must offer evidence of, or the record must indicate, some impropriety." *Washington*, 6 P.3d at 347.  Adverse legal rulings may be proper grounds for an appeal but are unlikely to provide grounds for a claim of bias or partiality.  *People in Interest of A.P.*, 2022 CO 24, ¶ 32; *see also Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 23 ("[A]dverse legal rulings, standing alone, do not constitute grounds for claiming prejudice or bias."); *Washington*, 6 P.3d at 347 (rejecting an inmate's claim of bias where the inmate "failed to make any showing that the hearing officer actually prejudged the case or decided it based on anything other than the evidence presented").

### B.     Application

¶ 33     Nothing in the record indicates that the hearing officer was biased or partial.  Indeed, during Brooks's testimony, the hearing officer asked clarifying questions to ensure he fully understood Brooks's assertion of self-defense.  And afterward the hearing officer explained his decision in detail.  The mere fact that the hearing

officer rejected Brooks's defense — a decision we agree is supported by the evidence — doesn't indicate bias. *See A.P.*, ¶ 32; *Bocian*, ¶ 23; *Washington*, 6 P.3d at 347.

¶ 34 Therefore, we reject Brooks's bias claim.

## V. Disposition

¶ 35 The judgment is affirmed.

JUDGE DUNN and JUDGE HAWTHORNE concur.